STATE OF NEBRASKA, EX REL. JOHN F. CORNELL, V. WILLIAM A. POYNTER.

FILED DECEMBER 19, 1899.   No. 10,961.

59  417
60  153
60  156
60  419
59  417
61  627

1. **Constitutional Law:** VALIDITY OF STATUTES. The judiciary may not declare an act of the legislature unconstitutional, unless it is clear that it contravenes some provision of the fundamental law.

2. ———: TAXATION. By section 1, article 9, of the constitution, the public revenues are required to be imposed by the levying of a tax by valuation, "so that every person or corporation shall pay a tax in proportion to the value of his, her or its property and franchises."

3. ———: ———: DISCRIMINATION. The rule of uniformity prescribed by section 1, article 9, of the constitution, inhibits the legislature from discriminating between taxpayers in any manner whatever.

4. ———: ———: RELEASE OF TAXES. Under section 4, article 9, of the constitution the legislature is powerless to pass a law releasing or discharging any individual or corporation or property from the payment of any portion of the taxes to be levied for state or municipal purposes.

5. ———: ———: ———: INSURANCE COMPANIES. Sections 36 and 37, chapter 47, Session Laws, 1899, in so far as they attempt to exempt the property of insurance companies from taxation, or to release or commute the taxes of such companies, are inimical to sections 1 and 4, article 9, of the constitution, and void.

6. **Statutes:** INVALID PORTIONS. When the invalid part of an act influenced or induced the passage of the residue, the entire act will be declared void.

31

7. ——: ——: INSURANCE. The unconstitutional provisions of sections 36 and 37, chapter 47, Session Laws, 1899, induced the passage of the remainder of said chapter, and invalidate the entire act.

ORIGINAL action in the nature of quo warranto to test the validity of chapter 47, Session Laws of 1899, creating an insurance bureau with the governor as commissioner. *Act held void.*

*W. B. Price* and *Robert Ryan*, for relator:

Section 1, article 9, of the constitution of Nebraska contains this requirement: "The legislature shall provide such revenues as shall be needful, by levying a tax by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property." By section 4 of the same article it is provided as follows: "The legislature shall have no power to release or discharge any county, city, township, town, or district whatever, or the inhabitants thereof, or any corporation, or the property therein, from their or its proportionate share of taxes to be levied for state purposes, or due any municipal corporation, nor shall commutation for such taxes be authorized in any form whatever." These provisions are violated by sections 36 and 37 of chapter 47, Session Laws of 1899, whereby, in consideration of the payment of certain fees, insurance companies are relieved from payment of taxes which other corporations are required to pay. See *City of New Orleans v. St. Charles S. R. Co.*, 28 La. Ann., 497; *Louisiana Cotton Mfg. Co. v. City of New Orleans*, 31 La. Ann., 498; *Neary v. Philadelphia, W. & B. R. Co.*, 7 Hous. [Del.], 419; *Philadelphia, W. & B. R. Co. v. Neary*, 5 Del. Ch., 600; *State Bank v. People*, 4 Scam. [Ill.], 303; *Le Roy v. East Saginaw C. R. Co.*, 18 Mich., 233; *Dauphin & L. S. R. Co. v. Kennerly*, 74 Ala., 583; *City of New Orleans v. La Fayette Ins. Co.*, 28 La. Ann., 756; *Life Ass'n v. Board of Assessors*, 49 Mo., 512; *Hogg v. Mackay*, 23 Ore., 339;

*City of Austin v. Austin Gaslight & Coal Co.,* 69 Tex., 180; *Altgelt v. City of San Antonio,* 81 Tex., 436; *In re Taxes,* 73 N. W. Rep. [Minn.], 970.

*Wilbur F. Bryant, contra:*

The constitutional provisions relating to taxation were copied from the constitution of the state of Illinois. In adopting those provisions the state of Nebraska adopted also a judicial construction adverse to the contention of counsel for relator. Under the construction thus adopted, sections 36 and 37, chapter 47, Session Laws of 1899, relieving insurance companies from the payment of certain taxes, do not violate sections 1 and 4, article 9, of the constitution, relating to taxation. See *Illinois C. R. Co. v. County of McLean,* 17 Ill., 291.

"I do not believe this question of taxation is reached in this case. Even were it possible for a court to hold this law unconstitutional, in face of the authorities hereinafter cited, such decision, it seems to me, could certainly not strike at this section as a whole. The objection would only lie to the clause: 'And shall be in full of all fees and taxes except taxes on real estate.' This clause is divisible `rom the remainder of its section. The exempting of property from taxes could hardly be an inducement for the passage of the act. But it is unnecessary to resort to this argument. The relator has quoted and cited numerous authorities. We could do the same, but find it unnecessary. It is a well and long settled principle of law that where one state has adopted a written law, and another state copies and adopts that written law, it adopts, likewise, with said law, the judicial interpretation which the former state had placed upon the same. No authorities need be cited upon this proposition. Now, let us apply this principle to the case in hand. The state of Illinois has substantially the same provisions in her constitution as are here quoted from the constitution of Nebraska. See Illinois Constitution, art. 9, secs. 1, 6. In 1855 this same question was before the

supreme court of Illinois. This was twenty years before our constitution was adopted. The case was one where Abraham Lincoln was of counsel; and took the same position on this question that is now taken by the respondent, who will quote his case in support of our position. The constitutional question is discussed at great length, in this case, and numerous authorities cited: 'It is within the constitutional power of the legislature to exempt property from taxation, or to commute the general rate for a fixed sum. The provisions, in the charter of the Illinois Central Railroad Company, exempting its property from taxation, upon the payment of a certain proportion of its earnings, are constitutional.' See *Illinois C. R. Co. v. County of McLean*, 17 Ill., 291. The court will see upon examination that the reasoning in *Illinois C. R. Co. v. County of McLean* will apply to our constitution just as well as to theirs. Both constitutions provide that every person and corporation shall pay a tax in proportion to the value of his, her or its property. Our constitution adds 'franchises.' A refined hypercaution, truly! Both constitutions deny the legislature, or general assembly, the power to release or discharge any county, city, township, town, or district whatever, or the inhabitants thereof (Our constitution adds the words, 'or corporation'), or the property therein, from their, or its, proportionate share of the taxes to be levied for state purposes (Our constitution adds the words, 'or due any municipal corporation'); and deny authority to make any commutation whatever in any form. It will be seen that these constitutional provisions are equally strong and comprehensive; and that they are substantially identical; and, as before stated, that the reasoning in the Illinois case, hereinbefore cited, applies equally to both constitutions. There is a different classification of the persons and things upon which the legislature, or general assembly, can impose a tax. But our supreme court has held that the legislature is not bound by the classification in section 1, article 9, of our constitution. See

*State v. Lancaster County*, 4 Nebr., 537; *State v. Ream*, 16 Nebr., 681; *Shaw v. State*, 17 Nebr., 334. These decisions follow the principle laid down in the Illinois case already cited. The words, 'or corporation,' were probably inserted by our constitutional convention, because of a doubt as to whether the word 'inhabitants' includes an artificial person. Taxes 'due' a municipal corporation are taxes which have been levied upon property which. has been assessed, and which are due under the statute. See, also, Winfield's Adjudged Words & Phrases. But it is profitless to speculate, as these interpolations do not, in any manner, affect the construction of our constitution. Illinois passed a reciprocity insurance law, similar to section 40 of the 'Weaver Act.' In passing upon this act the supreme court of Illinois held that this law could not be regarded as in any sense the enforcing of the laws of a foreign state by the courts of Illinois. But the court compared it to the enforcement of a foreign contract. Number 5 of the *syllabi* is as follows, and is borne out in the opinion: 'Nor is that section (29) in conflict with section 1, article 9, of the constitution of 1870, which authorizes the legislature to tax peddlers, auctioneers, insurance business, etc., in such manner as it may, from time to time, direct by general law uniform as to the class upon which it operates, as it does not follow that all foreign insurance companies are, for the purpose of assessment or taxation, to be deemed of the same class, within the meaning of the constitutional provision. The constitution has left the power with the legislature to classify such companies for taxation, as is done by the act in question.' See *Home Ins. Co. v. Swigert*, 104 Ill., 653. The same principle in regard to uniformity of taxation is held by this court in *Pleuler v. State*, 11 Nebr., 547."

*C. J. Smyth*, Attorney General, *W. D. Oldham*, Deputy Attorney General, and *Arthur J. Weaver*, also for respondent.

The argument of the attorney general was upon the same lines as in *Telephone Co. v. Cornell,* 59 Nebr., 737.

*Arthur J. Weaver* filed no brief, and made no argument.

The case was argued, for the relator, by *Robert Ryan;* and by *Willis D. Oldham, Deputy Attorney General,* and *Wilbur F. Bryant,* for the respondent.

*Oldham* said that, though the tax feature of the law might be unconstitutional, the law as a whole should be sustained, citing *State, ex rel. Field,* 119 Mo., 593; *Gordon v. Cornes,* 47 N. Y., 608; *Allen v. Louisiana,* 103 U. S., 80.

*Ryan* cited the Illinois constitution of 1870 and decisions made thereunder which appear in the opinion of the court.

*Bryant,* in reply to relator's counsel, said: "The question of the constitutionality of the taxation commuted in the 'Weaver Law' is not raised in this case. For reasons stated in the brief heretofore filed, it can not, in any manner, affect the constitutionality of the transfer from the auditor to the governor. As Brother Oldham says, it could have been no inducement to the passage of the act. For the taxation would be as unconstitutional in the auditor's office as in the governor's. The counsel for the relator have attacked the construction of our constitution, based upon *Illinois C. R. Co. v. County of McLean,* 17 Ill., 291, cited in the brief; and claim that it was the constitution of 1848 which was construed in that case. Granted. What then? Let us see what the Illinois constitution of 1848 says: 'The general assembly shall provide for levying a tax by valuation, so that every person and corporation shall pay a tax in proportion to the value of his or her property,' and so forth. See section 2, article 9. 'Corporate authorities of counties, townships, school districts, cities, towns, and villages may be vested with power to assess and collect taxes for corporate purposes; such taxes to be uniform in respect to

persons and property within the jurisdiction of the body imposing the same. And the general assembly shall require that all the property within the limits of municipal corporations, belonging to individuals, shall be taxed for the payment of debts contracted under authority of law.' See section 5, article 9. Counsel should remember that the Illinois cases, which they cited, were decided long after the adoption of our constitution. Have they forgotten the rule? So much for the Illinois constitution of 1848. My brethren are welcome to the cold comfort. But this taxation question has been sufficiently discussed for matter not in the case. When it comes up in the way it did in *Hawkeye Ins. Co. v. French,* cited by counsel, it will be time enough to decide it. In such a case the insurance companies will have an opportunity to fight their own battles. In that case, they had paid the tax provided by the insurance law; and were seeking to avoid the municipal tax."

NORVAL, J.

The legislature of 1899 passed an act, which received executive approval, by its terms, *inter alia,* creating a state insurance bureau, naming the governor as commissioner in charge of such bureau, charging him with the duty of enforcing the laws relative to insurance and the supervision of insurance companies, and providing for the organization and incorporation of insurance companies, for their admission from other states and counties, and to regulate their conduct. See Session Laws, 1899, p. 207, ch. 47. Prior to said act, for more than a quarter of a century, the state insurance department was under the supervision and control of the auditor of public accounts, which department was by the said act of 1899 attempted to be wrested from the auditor and placed under the supervision of the chief executive of the state. This is an original action in quo warranto, in the name of the state, on the relation of John F. Cornell, auditor of public accounts, against William A. Poynter,

as governor, to test the validity of said chapter 47, Session Laws, 1899. Our attention has been challenged to numerous alleged infirmities and imperfections on the face of the act in question, which, it is confidently asserted by counsel for relator, invalidate the whole law; but we do not deem it essential that we should now consider them, since questions of graver import have been urged upon our attention. The act has been assailed as unconstitutional upon various points; among others, that sections 36 and 37 of said chapter 47 contravene sections 1 and 4 of article 9 of the constitution, which are as follows:

"Section 1. The legislature shall provide such revenue as may be needful, by levying a tax by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property and franchises, the value to be ascertained in such manner as the legislature shall direct, and it shall have power to tax peddlers, auctioneers, brokers, hawkers, commission merchants, showmen, jugglers, inn-keepers, liquor dealers, toll bridges, ferries, insurance, telegraph and express interests or business, venders of patents, in such manner as it shall direct, by general law, uniform as to the class upon which it operates.

"Sec. 4. The legislature shall have no power to release or discharge any county, city, township, town, or district whatever, or the inhabitants thereof, or any corporation, or the property therein, from their or its proportionate share of taxes to be levied for state purposes, or due any municipal corporation, nor shall commutation for such taxes be authorized in any form whatever."

Sections 36 and 37 of the act assailed follow:

"Sec. 36. Insurance companies shall pay fees in this state as follows: Domestic companies organized or incorporated under this act, shall pay fifty dollars ($50.00) for charter and all the necessary filings and papers to complete their incorporation. Domestic companies so incorporated, and those incorporated under any act re-

pealed by this act, or in any way complying with this act, shall pay for filing each annual statement, twenty dollars ($20.00). For each agent's certificate, fifty cents. Two certificates of publication, one dollar. The company's annual license, or copy of same, one dollar. Each and every such domestic insurance company shall also be taxed upon the excess of premium received over losses and ordinary expenses incurred within the state during the year previous to the year of listing in the county where the agent conducts the business properly proportioned by the company at the same rate that all other personal property is taxed, and the said agent shall render the list and be personally liable for the tax; and if he refuse to render the said list or to make affidavit that the same is correct the amount may be assessed accordingly to the best knowledge and discretion of the assessor. The fees and taxes herein provided for shall be in lieu of all fees and taxes, except taxes upon real estate and other taxes, provided in the general revenue law. Also an occupation tax or volunteer fire department tax not to exceed ($5.00) five dollars per annum for each agency, which any city, town or village in this state may impose by ordinance for the support of such fire department.

"Sec. 37. Every other state company shall pay one hundred dollars ($100.00), for depositing copy of charter, statement, and all the papers necessary to comply with this act, and the certificate of admission from the insurance commissioner. For filing copy of amended charter, seventy-five dollars ($75.00). Filing annual statement, fifty dollars ($50.00). Each agent's certificate, two dollars ($2.00). Companies doing a life and accident business, shall file separate statements for each department of their business, and pay one hundred dollars ($100.00) each year for filing the two statements. Life insurance companies that also transact industrial business, shall file separate statements for each department of their business, and pay one hundred dollars ($100.00) each year for filing the two

statements. Miscellaneous companies shall report all their transactions on one statement, and pay the one fee of fifty dollars ($50.00) each year. Every other state insurance company, and every such miscellaneous company, shall each year in the month of January, report under oath, to the insurance commissioner, the gross amount of premiums received for the preceding calendar year, upon or on account of life, accident, fire or miscellaneous business, or insurance affected on property located within this state; such report shall be sworn to by the president and treasurer, or other chief fiscal officer. Such companies shall pay two per cent of their gross premiums so reported, as an additional license fee to the state treasurer, and shall not be relicensed for the year, until this payment is made. Provided, Any such life or accident company, which is, under reciprocal provisions in this act, obliged to pay more than two dollars for the annual license hereinafter provided in this section, or is required to pay any sum into the state treasury for the school fund, shall be allowed to deduct such excess over two dollars, from its bill for taxes before paying the same. Every other state company shall annually pay two dollars for two certificates of publication, two dollars for annual license of the company, or copy of same. For every copy of paper filed, as herein provided, the sum of ten cents per folio, and one dollar for certifying the same and affixing the seal of the office thereto. The taxes and fees above provided shall be paid to the state treasurer, and shall be in full of all fees and taxes, except taxes on real estate, which may be imposed by any county, municipality or the state, unless otherwise provided by this act. Provided, That in cities of the first class having more than ten thousand inhabitants and in cities of the second class having more than five thousand inhabitants that maintain a fire department, the city council may by, ordinance impose an occupation tax on all fire insurance companies maintaining an agency in, or doing business in such city, not to exceed ten dollars per annum; for

the benefit of such fire department.   Provided further, that in cities of the second class having less than five thousand inhabitants and in villages that maintain a fire department, the city council or board of trustees may, by ordinance impose an occupation tax on all fire insurance companies maintaining an agency or doing business in such city or village not to exceed five dollars per annum, for the benefit of such fire department."

Before entering upon a discussion of the constitutional question to which we have alluded, it is important that there ever be kept in view that the judiciary will not declare an act of the legislature unconstitutional, unless it is clear that such act is inhibited by the fundamental law.   If a reasonable doubt exists, it must be solved in favor of the validity of the statute.   See *Turner v. Althaus*, 6 Nebr., 55; *State v. Lancaster County*, 4 Nebr., 537; *Pleuler v. State*, 11 Nebr., 547; *Board of Directors Alfalfa Irrigation District v. Collins*, 46 Nebr., 411; *Davis v. State*, 51 Nebr., 302.   With this principle firmly implanted in our mind, we proceed to the consideration of the constitutional question.

The provisions of the constitution already quoted, which are invoked by the relator, are plain, and the language employed free from ambiguity.   Their meaning is involved in no doubt.   The public revenues are required to be raised by the imposition of a tax by valuation, "so that every person and corporation shall pay a tax in proportion to the value of his, her or its property and franchises."   See Constitution, art. 9, sec. 1.   To the legislature is committed the power of determining the manner for ascertaining the assessed value of property, as well as the authority to tax certain business interests and persons belonging to the avocations enumerated in said section 1, article 9, of the constitution.   The rule of uniformity vouchsafed by said section forbids the enactment of any law exempting the property of any person or corporation from taxation, except such as enumerated in section 2, article 9, of the constitution.   The property

of insurance companies can not be exempt from taxation. Section 1 of said article has been frequently under consideration by this court. In *Union P. R. Co. v. Saunders County*, 7 Nebr., 228, it was decided that an act of the legislature was violative of said section of the constitution which provided that the sum of $100 be deducted from the assessment of lands for each acre planted and cultivated with forest and fruit trees. It has been ruled that the imposition of a land road tax of $4 per quarter section was inhibited by said section of the constitution. See *McCann v. Merriam*, 11 Nebr., 241; *Dundy v. Richardson County*, 8 Nebr., 508; *Covell v. Young*, 11 Nebr., 511. Corporate stocks are taxable under said section. See *Mortensen v. West Point Mfg. Co.*, 12 Nebr., 197. The rule of uniformity inhibits the legislature from discriminating between taxpayers in any manner. See *State v. Graham*, 17 Nebr., 43. In every instance where this court has spoken upon the subject it has been determined that the legislature is powerless to relieve from the burdens of taxation the property of any individual or corporation, but that the constitutional rule of uniformity requires all taxable property within the taxing district where the assessment is made shall be taxed, except property specifically exempt by the fundamental law. This doctrine is entirely sound, and the language of the constitutional provision we have been considering will not authorize or permit of any other or different interpretation.

By section 4, article 9, of the constitution the legislature, in plain and unequivocal language, is inhibited from enacting any law releasing or discharging any individual or corporation or property from their or its proportional share of taxes to be levied for state or municipal purposes. This court recognized and applied this provision when it held that the lawmaking body could not authorize the sale of tax certificates for sums less than the amount due. See *State v. Graham*, 17 Nebr., 43; *Lancaster County v. Trimble*, 33 Nebr., 121; *State v. Berka*, 20 Nebr., 375; *Lancaster County v. Bush*, 35

Nebr., 119. It will be observed that section 36, chapter 47, Session Laws, 1899, provides that each domestic insurance company organized under said law shall be taxed upon the excess of premiums over losses and ordinary expenses incurred in the state during the preceding year in the county where the agent conducts the business, properly apportioned by the company, at the same rate other personalty is taxed, and that the fees and taxes specified in said section shall be in lieu of all fees and taxes, excepting those upon real estate and other taxes provided in the general revenue law; while by section 37 of said chapter 47 every other state insurance company shall pay certain fees, and in addition two per cent of their gross premiums, into the state treasury, and that the same "shall be in full of all fees and taxes, except taxes on real estate, which may be imposed by any county, municipality or the state." By these two sections all insurance companies are not taxed alike. Under section 36 one method or basis is adopted for the taxation of domestic insurance companies organized under chapter 47; while section 37 adopts another and different basis, or rate, for the assessment of all other state insurance companies. By section 36 the taxes are to be imposed and collected in the several counties where the corporation has agencies established, at the same rate other personalty is assessed; while section 37 requires the taxes to be paid into the state treasury, thereby prohibiting municipal corporations from receiving any portion of the taxes collected from the insurance companies referred to in said section, and such companies are relieved from the payment of all other taxes except those imposed upon real estate; while by section 36 another class of insurance companies are required to pay, not only taxes upon their real estate, but all other taxes provided by the general revenue law of the state. Thus it is plain that the legislature has violated the rule of uniformity prescribed by the constitution as between the different classes of insurance companies. Moreover, sec-

tion 37, if enforced, would relieve one class of insurance companies from taxation upon personal property, while the individual citizen is liable to taxation upon all his personalty within the state. So the rule of uniformity vouchsafed by the constitution has been ignored by the legislation under review, and taxes are attempted to be commuted in violation of the fundamental law.

But it is argued by counsel for respondent that section 1, article 9, of the constitution was borrowed from the state of Illinois, and, having been previously construed by the supreme court of that state, we adopted the provision with the construction placed thereon. It is true our section 1, article 9, is substantially section 2, article 9, of the constitution of 1848 of Illinois, and the supreme court of that state in 1855, in *Illinois C. R. Co. v. County of McLean*, 17 Ill., 291, decided that it was within the constitutional power of the legislature to exempt property from taxation, or to commute the general rate for a fixed sum. The decision can not have the extra-territorial force for which counsel contend, for various reasons. The constitution of Illinois of 1848 was not in force at the time our constitution was adopted, it having been superseded by the constitution of that state of 1870; and the superseded instrument did not contain a provision corresponding to our section 4, article 9, which, in express terms, forbids the release, discharge or commutation of taxes. The absence from the constitution of 1848 of a provision similar to our section 4, article 9, alone makes the decision in *Illinois C. R. Co. v. County of McLean, supra*, inapplicable. Besides, such decision is in direct opposition to the decisions of this court, to which we have already called attention. Again, the supreme court of Illinois, both prior and subsequent to rendering of the decision in the case of *Illinois C. R. Co. v. County of McLean*, had placed a different construction on section 2, article 9, of the constitution of 1848 of Illinois. Thus, in construing that section in *Trustees v. McConnel*, 12 Ill., 138, it was ruled that it was not within the power of the legis-

lature to exempt one species of personal property from taxation, while a tax is imposed upon another within the same taxing district. In the opinion in that case the court observed: "The constitution of the state expressly declares that the mode of levying a tax shall be by valuation, 'so that every person and corporation shall pay a tax in proportion to the value of his or her property.' Under this provision the legislature would have no power to exempt from taxation one species of personal property while it collected a tax from another within the same jurisdiction, and it is never to be presumed that the legislature intended to pass a law which should be contrary to the constitution, either in its letter or spirit." In the later case of *Hunsaker v. Wright*, 30 Ill., 146, the same clause of the constitution was again before the supreme court of Illinois, and in the course of the opinion filed therein it is said: "These provisions were manifestly inserted in the fundamental law for the purpose of insuring equality in the levy and collection of the taxes to support the government, whether levied for state, county or municipal purposes. The design was to impose an equal proportion of their burdens upon all persons within the limits of the district or body imposing them. Under these provisions, the legislature has no power to exempt or release a person or community of persons from their proportional share of these burdens." It is plain that if we borrowed our constitutional provisions from the 1848 constitution of Illinois, we adopted the latest construction placed thereon by the highest judicial tribunal of the state, instead of the earlier one in conflict therewith. It is, however, believed that sections 1 and 4, article 9, of our constitution were taken from the constitution of Illinois of the year 1870, which sections were construed by the supreme court of the state of Illinois in *People's Loan & Homestead Ass'n v. Keith*, 153 Ill., 609, and in *Ex parte People's Loan & Building Ass'n*, 153 Ill., 655, and it was ruled that a statute which attempted to exempt from taxation the shares of stock in homestead loan associa-

tions, and notes taken by them on loans, was inimical to the sections of the constitution of that state, corresponding to those of our own which we have been considering.

A similar question was passed upon recently by the supreme court of Iowa in *Hawkeye Ins. Co. v. French*, 80 N. W. Rep. [Ia.], 660. The legislature of that state had passed a law which imposed a tax of one per cent on the gross earnings of certain insurance companies, to be paid into the state treasury, and exempted them from the payment of all other taxes, state or local, except taxes on real estate and special assessment. It was held that said legislation was invalid, since it contravened section 2, article 8, of the constitution of Iowa, which requires the property of all corporations for pecuniary profit be taxed the same as that of individuals. Deemer, J., in the course of the opinion of the court, observed: "It is the provision of the act relieving companies who have paid a tax on gross income from all other state and local taxes that is in issue. Under our law the individual pays taxes for state purposes, for county purposes, for city or municipal purposes, and for the support of the schools. If section 1333 is valid in all its provisions, insurance companies are not required to contribute anything to the county, the city, or the school district. These burdens are removed from their shoulders, although they may have large interests which require protection at the hands of the county and the city. It contributes to the state fund alone, and no part of its contribution ever reaches the smaller subdivisions of government. The objects of the tax are not the same as that collected from individuals, and the burdens are not equally distributed. This is so plain that no amount of argument or exposition will add anything to the statement. Property of corporations is not subject to taxation the same as individuals when the individual is compelled to pay taxes on his property to the county, the city, and the school district, and the corporation is not. Again, it is manifest that the personal property of corporations engaged in the business of insur-

ance is exempt from taxation for all purposes whatever if appellants' contention is correct.  Section 1333 provides for a tax on the gross receipts of such companies without reference to the amount of their capital stock, their surplus, or their investments.  No account whatever is made of their holdings.  If the business of the year should not prove profitable, because of losses and premiums returned, no tax would be required of them under section 1333, notwithstanding the fact that they may have had large amounts of personal property, which, in the hands of an individual, would be subject to taxation.  Surely their property is not subject to taxation 'the same as that of individuals' if the only tax they are required to pay is that imposed by this section.  It well may be doubted whether a tax on premiums is a tax on property in its proper sense.  See *City of Dubuque v. Northwestern Life Ins. Co.*, 29 Ia., 9;  *City of Burlington v. Putnam Ins. Co.*, 31 Ia., 102.  But however this may be, it is manifest that the personal property of the corporation accumulated from year to year is not subject to taxation under the provision relied upon by appellants.  The legislature did not have the power to exempt this property from taxation, and its act in so doing is clearly unconstitutional and void.  Neither had it the power to absolve these companies from the payment of county, city, and school taxes."  The foregoing argument is unanswerable, and that it is applicable to the case at bar is obvious. See *City of New Orleans v. St. Charles Street R. Co.*, 28 La. Ann., 497; *City of New Orleans v. La Fayette Ins. Co.*, 28 La. Ann., 756; *Life Ass'n v. Board of Assessors*, 49 Mo., 512; *In re Taxes Delinquent in St. Louis County*, 73 N. W. Rep. [Minn.], 970.  Upon principle, as well as authority, the conclusion is irresistible that sections 36 and 37 of chapter 47, Laws, 1899, are inimical to the provisions of sections 1 and 4, article 9, of the constitution, and are void.

It remains to be considered what effect the unconstitutional provisions of said sections 36 and 37 have upon the remainder of the act of which they formed parts.  The

32

rule is a familiar one, that when the valid and invalid portions of a legislative enactment are capable of being separated, and the valid part is a complete act and not dependent upon that which is void, the latter alone will be rejected, and the rest sustained, if it is manifest that the void part was not an inducement to the legislature to pass the part which is valid. But if it is manifest, from an inspection of the law itself, that the invalid portion formed an inducement to its passage, the entire act will fail. See *State v. Lancaster County*, 6 Nebr., 474; *State v. Lancaster County*, 17 Nebr., 85; *Trumble v. Trumble*, 37 Nebr., 340; *Low v. Rees Printing Co.*, 41 Nebr., 127; *State v. Moore*, 48 Nebr., 870; *German-American Fire Ins. Co. v. City of Minden*, 51 Nebr., 870; *State v. Bowen*, 54 Nebr., 211. It is not necessary that the invalid portion of an act of the legislature should have operated as the sole inducement to the passage of the law to render the same void. It will have that effect if the void part to any extent influenced the legislature in passing the statute. It requires no argument to demonstrate that chapter 47 of the Laws of 1899 would not have received the approval of the legislature had it not contained any provision for the payment of fees and taxes by the insurance companies; and it is equally plain that the same amount of fees and taxes imposed by sections 36 and 37, and the requirement that the same should be paid into the state treasury, would not have been incorporated in the law had the unconstitutional provision exempting insurance companies from taxes been eliminated from the bill prior to the taking of the vote thereon by the legislature. If the motive inducement which prompted the enactment of said chapter 47 was merely a desire to transfer the insurance department of the state from the auditor to the governor, as is suggested by counsel for respondent, it is very evident that the act would most likely have been differently framed, and the provisions of said sections 36 and 37, so far as they attempt to exempt insurance companies from taxation, would have been omitted therefrom. While,

during the investigation of the subject, it has been our desire to sustain the law, we have been irresistibly forced to the conclusion that the entire act must fail by reason of the unconstitutional provisions therein contained, which have been already pointed out.

JUDGMENT ACCORDINGLY.