REQUESTED BY: Senator John W. DeCamp Nebraska State Legislature State Capitol Lincoln, Nebraska 68509
Dear Senator Decamp:
This is in response to your letter of March 22, 1985, in which you seek an opinion on the constitutionality of a proposed amendment to LB 691.
The apparent purpose of this amendment is to overcome the constitutional defects we noted in our opinion on LB 691 to Senator Lundy dated March 8, 1985.
That opinion centered primarily on Article VIII, Section4, of the Nebraska Constitution which provides as follows:
 Except as to tax and assessment charges against real property remaining delinquent and unpaid for a period of fifteen years or longer, the Legislature shall have no power to release or discharge any county, city, township, town, or district whatever, or the inhabitants thereof, or any corporation, or the property therein, from their or its proportionate share of taxes to be levied for state purposes, or due any municipal corporation, nor shall commutation for such taxes be authorized in any form whatever; Provided, that the Legislature may provide by law for the payment or cancellation of taxes or assessments against real estate remaining unpaid against real estate owned or acquired by the state or its governmental subdivisions.
Instead of the original language of LB 691 which would have placed legal and equitable title to the property of a failed institution in the Banking Department as receiver, the amendment provides that:
 In addition to the forgoing (sic), the department shall be vested with legal, as well as equitable, title to all of the real estate owned by such bank when the unsecured depositors and the unsecured creditors representing 85% or more of the total amount of the deposits and unsecured claims of the bank shall have assigned their legal interest in such real estate to the department. The assignment of the depositors' and creditors' legal interest in the real estate to the department may be accomplished by, but shall not be limited to, the depositors' and creditors' approval of a settlement agreement relating to a claim submitted under sections 81-8,209 to 81-8,239 which incorporates such assignment as a term of settlement, or by the depositors' or creditors' approval of a contract or plan of reorganization under section 8-1,118.
The obvious purpose of this proposed amendment is to fall within the exception to Article VIII, Section 4, which permits the Legislature to cancel taxes against real estate owned or acquired by the state.
One initial problem with the amendment is the fact that the creditors and depositors of the financial institution do not have title to the assets of that institution but merely a claim and lien against the assets of the institution pursuant to Neb.Rev.Stat. § 8-1,110 (Reissue 1983). It is difficult to see how the mere assignment of these claims and liens against the assets can vest title to the property in the Banking Department. This apparent attempt to transfer title by legislative fiat thus raises additional questions of due process, particularly in regard to the shareholders of such an institution. It would furthermore appear that the Banking Department would nevertheless continue to act in its limited fiduciary capacity as receiver even under this amendment, and from that standpoint our original comments to Senator Lundy are still pertinent.
These difficulties aside, there nevertheless remains a fundamental constitutional problem with this attempt to place title to the property of a failed financial institution in the state solely for the purpose of falling within the constitutional exemption for the release of taxes on property owned by the state. What we have here is a not so subtle attempt by the Legislature to do indirectly what it cannot do directly.
When faced with such a challenge, the court would have to examine the rationale behind the constitutional prohibition against the forgiveness of taxes which has existed in the Constitution since its origin, and would furthermore have to take recognition of their uniform application of this provision forbidding the release of taxes. This rationale was aptly summarized in Peterson v. Hancock,155 Neb. 801, 54 N.W.2d 85 (1952):
 In Steinacher v. Swanson, 131 Neb. 439, 268 N.W. 317, this court held that: `The legislature does not have the power to release or discharge a tax, such action being prohibited by section 4, art. VIII of the Constitution.' Further, `Neither may the legislature circumvent an express provision of the Constitution by doing indirectly what it may not do directly.' The opinion, quoting from County of Lancaster v. Trimble, 33 Neb. 121, 49 N.W. 938, said: `'The legislature is without power to release any inhabitant or corporation from his or its proportionate share of taxes, nor can it confer such authority upon county commissioners. * * * The legislature is powerless to confer such authority. It cannot do indirectly what the Constitution prohibits it from doing directly; that is clear. Wood v. Helmer, 10 Neb. 65, 68.'"
 In State ex rel. Cornell v. Poynter, 59 Neb. 417, 81 N.W. 431, this court held: `The rule of uniformity prescribed by section 1, article 9, of the constitution, inhibits the legislature from discriminating between taxpayers in any manner whatever.
 "Under section 4, article 9, of the constitution the legislature is powerless to pass a law releasing or discharging any individual or corporation or property from the payment of any portion of the taxes to be levied for state or municipal purposes." In the opinion, it is said:
 "The rule of uniformity inhibits that legislature from discriminating between taxpayers in any manner. See State v. Graham, 17 Neb. 43. In every instance where this court has spoken upon the subject it has been determined that the legislature is powerless to relieve from the burdens of taxation the property of any individual or corporation, but that the constitutional rule of uniformity requires all taxable property within the taxing district where the assessment is made shall be taxed, except property specifically exempt by the fundamental law. This doctrine is entirely sound, and the language of the constitutional provision we have been considering will not authorize or permit of any other or different interpretation.
 "By section 4, article 9, of the constitution the legislature, in plain and unequivocal language, is inhibited from enacting any law releasing or discharging any individual or corporation or property from their or its proportional share of taxes to be levied for state or municipal purposes."
 In State ex rel. Bee Building Co. v. Savage, 65 Neb. 714, 91 N.W. 716, this court said: `The subject relating to the rule of uniformity has heretofore received consideration by this court in the case of State v. Osborn, 60 Neb. 415. It is there held that the valuation of property for taxation must be uniform. Says the court in the opinion, at page 419: `There is another cardinal rule of taxation, and that is that `every person and corporation shall pay a tax in proportion to the value of his, her or its property and franchises.' Constitution, art. 9, sec. 1. And this rule of uniformity applies not only to the rate of taxation but as well to the valuation of property for the purposes of raising revenue. High School District No. 137 v. Lancaster County, 60 Neb. 147.
 The constitution forbids any discrimination whatever among taxpayers. State v. Graham, 17 Neb. 43; State v. Poynter, 59 Neb. 417. * * *''
Id. at 821-823.
It is readily apparent here that the constitutional prohibition against the forgiveness of taxes is merely another manifestation of the principle of uniformity of taxation set forth in Article VIII, Section 1, of the Constitution. Taxpayers must simply be treated uniformly throughout the entire process of taxation. With this understanding of the principle, we cannot say that the courts would uphold such an attempt to avoid the obvious intent of the constitutional prohibition against the release of taxes. Admittedly, the Constitution was amended to allow the release of taxes upon property owned or acquired by the state, no doubt in recognition of the perfectly valid principle of intergovernmental immunity from taxation. Can this provision, however, be used merely as a mechanism to avoid the principle of uniformity of taxation as it is applied in the general prohibition against the release or forgiveness of taxes? Under this scheme, there would be, in effect, discrimination against certain taxpayers. Would the court thus uphold the purported transfer of title of such property to the state for a limited period of time and for the sole purpose of forgiveness of the taxes upon this property? In view of the foregoing rationale, we think not.
Sincerely,
ROBERT M. SPIRE Attorney General
John Boehm Assistant Attorney General