STATE OF NEBRASKA EX REL. CLARENCE A. H. MEYER, ATTORNEY GENERAL, PLAINTIFF, V. COUNTY OF LANCASTER, NEBRASKA, ET AL., DEFENDANTS.

113 N. W. 2d 63

Filed January 19, 1962. No. 35144.

Clarence A. H. Meyer, Attorney General, and Melvin K. Kammerlohr, for plaintiff.

Paul L. Douglas and Cline, Williams, Wright, Johnson, Oldfather & Thompson, for defendants.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

SPENCER, J.

This is an original action brought by the State of Nebraska on the relation of the Attorney General, hereinafter referred to as plaintiff, at the direction of the Governor, pursuant to section 84-205, subsection (9), R. R. S. 1943, to enjoin the defendants from proceeding under Legislative Bill No. 159, Laws of Nebraska, 1961, chapter 54, page 200, hereinafter referred to as L. B. 159, because of its constitutional invalidity.

The defendants are the County of Lancaster and Ralph E. Harlan, William M. Grossman, and Kenneth E. Bourne, its three duly qualified and acting county commissioners. The petition alleges that L. B. 159 purports to authorize any county or incorporated city or village to issue revenue bonds for the purpose of defraying the cost of acquiring, purchasing, constructing, or maintaining lands, buildings, or improvements suitable for use for manufacturing and industrial enterprises, and to pay all expense in connection with the issuance of said bonds. It is further alleged that the act provides that such

property may be leased or sold to private individuals or corporations, and that said act is in violation of the Constitution of Nebraska for the following reasons:

"1. It constitutes an attempt to donate lands under the control of the state to a private corporation or private individual in violation of the provisions of Section 21, Article III, of the Nebraska Constitution.

"2. It is an attempt to authorize the giving or loaning of the public money or credit of the state in aid of private individuals, associations and corporations, in violation of the provisions of Section 3 of Article XIII of the Nebraska Constitution, and is beyond the purview of Section 16, Article XV of the Nebraska Constitution, commonly known as the Industrial Development Amendment.

"3. There are provisions in the act not clearly expressed in the title thereof, particularly the provision for sale and conveyance of property acquired by a municipality or county under said act and are therefore void under the provisions of Section 14, Article III, of the Nebraska Constitution.

"4. The provisions in said act for the sale and conveyance of property acquired under said act by municipalities and counties exceeds the authority granted by Section 16, Article XV of the Nebraska Constitution.

"5. Said act attempts to authorize the issuance of revenue bonds without submission to the qualified electors of the municipality or county in violation of Section 2, Article XIII of the Nebraska Constitution and beyond the express authority granted by Section 16, Article XV of the Nebraska Constitution.

"6. That the act attempts to create powers, rights, benefits, and privileges for private purposes which are out of harmony with and contrary to the constitutional provisions herein set forth."

There is also an allegation as to the invalidity of section 8 of L. B. 159, which will be set out hereinafter.

It is then alleged that the defendant county, acting

through the defendant commissioners, has adopted a resolution authorizing the issuance of three million dollars in revenue bonds for the purchase from the Wander Company, a Delaware corporation, of certain property for the construction thereon of an industrial and manufacturing plant, all to be paid for from the proceeds of the sale of the revenue bonds. When this construction is referred to hereafter, it will be designated as the project.

It is then alleged that the resolution incorporates a purported lease and agreement with Wander Company as lessee of said plant at a rental sufficient to pay the costs and expenses and to retire the bonds over a period of 30 years, with an option to purchase the plant and facilities for five thousand dollars and costs and expenses when the bonds have been retired.

This case had its antecedents in the case of State ex rel. Beck v. City of York, 164 Neb. 223, 82 N. W. 2d 269, in which this court held sections 18-1601 to 18-1613, R. R. S. 1943, violative of the Nebraska Constitution. Those sections embraced Laws of Nebraska, 1953, chapter 40, page 133, which provided for the issuance of revenue bonds by incorporated cities and villages. Subsequent thereto, the Seventieth (Extraordinary) Session of the Nebraska Legislature, convening on August 1, 1960, adopted Legislative Bill No. 1, approved August 9, 1960, to place on the ballot at the 1960 general election the question of the adoption of the following amendment to Article XV of the Constitution of Nebraska: " 'Sec. 16. Nowithstanding any other provision in the Constitution, the Legislature may authorize any county, incorporated city or village, including cities operating under home rule charters, to acquire, own, develop, and lease real and personal property to manufacturing and industrial enterprises and to issue revenue bonds for the purpose of defraying the cost of acquiring and developing such property by construction, purchase, or otherwise. Such bonds shall not become general obligation

bonds of the governmental subdivision by which such bonds are issued. Any such real or personal property so acquired, owned, developed or used by any such county, city or village, shall be subject to taxation to the same extent as private property during the time it is leased to or held by private interests, notwithstanding the provisions of Article VIII, section 2, of the Constitution. The acquiring, owning, developing, and leasing of such property shall be deemed for a public purpose, but the governmental subdivision shall not have the right to acquire such property by condemnation. The provisions of Article XIII, section 2, of the Constitution, shall not apply to the issuance of revenue bonds herein provided for. The principal of and interest on any bonds issued may be secured by a pledge of the lease and the revenues therefrom and by mortgage upon such property. No such governmental subdivision shall have the power to operate any such property as a business or in any manner except as the lessor thereof.' " Article XV, section 16, of the Constitution of Nebraska, will hereafter be referred to as the amendment.

The amendment was adopted by the electorate and proclaimed by the Governor as a part of the Constitution of Nebraska on November 28, 1960. L. B. 159 is the purported legislative implementation of the amendment. It was adopted, approved, and made effective by reason of the emergency clause, on March 14, 1961. The resolution of the defendant county was adopted on August 22, 1961, and this action was docketed on September 5, 1961. Defendants and each of them demurred to the plaintiff's petition for the reason that it fails to state facts sufficient to constitute a cause of action. This brings before us the constitutionality of L. B. 159, as raised by the plaintiff's petition.

Even though we may question the wisdom of a given enactment as a matter of policy, that gives us no right to strike it down if it violates no provision of the fundamental law. We clearly stated our position on this

type of legislation previous to the amendment in State ex rel. Beck v. City of York, 164 Neb. 223, 82 N. W. 2d 269. Now, however, L. B. 159 must be viewed in the light of the adoption of the amendment, which has changed our fundamental law in an attempt to validate that which we held to be invalid.

Before entering on a discussion of the specific allegations of invalidity raised by the plaintiff's petition, it is well to state certain elemental propositions. The judiciary may not declare an act of the Legislature unconstitutional unless it clearly contravenes some provision of the fundamental law. State ex rel. Cornell v. Poynter, 59 Neb. 417, 81 N. W. 431. It is not the province of the court to annul a legislative act unless it clearly contravenes the Constitution, and no other resort remains. Wilson v. Marsh, 162 Neb. 237, 75 N. W. 2d 723. It is the duty of courts to ascertain and to carry into effect the intent and purpose of the framers of the Constitution or of an amendment thereto. Swanson v. State, 132 Neb. 82, 271 N. W. 264.

In construing an act of the Legislature, all reasonable doubts must be resolved in favor of its constitutionality. Nebraska Mid-State Reclamation Dist. v. Hall County, 152 Neb. 410, 41 N. W. 2d 397. In construing a constitutional provision for the purpose of ascertaining the intent of the people in adopting it when its language is explicit, the courts are bound to seek for the intention in the words of the provision itself, and they are not to suppose or hold that the people intended anything different from what the meaning of the language imports. Swanson v. State, *supra*.

Where a statute is susceptible of two constructions, one of which renders it constitutional and the other unconstitutional, it is the duty of the court to adopt the construction which, without doing violence to the fair meaning of the statute, will render it valid. Jensen v. Omaha Public Power Dist., 159 Neb. 277, 66 N. W. 2d 591.

With these observations on general applicable rules of construction, we will consider together contentions Nos. 1, 2, and 5 raised by the petition as to constitutionality. The first is that L. B. 159 constitutes an attempt to donate lands under the control of a state to a private corporation in violation of the provisions of Article III, section 21, Constitution of Nebraska. That section is as follows: "Lands under control of the State shall never be donated to railroad companies, private corporations or individuals."

The second contention is that L. B. 159 is an attempt to authorize the giving or loaning of public money or credit in violation of Article XIII, section 3, Constitution of Nebraska. That section is as follows: "The credit of the state shall never be given or loaned in aid of any individual, association, or corporation." Except as the Constitution provides otherwise, these provisions applicable to the state apply also to all political subdivisions thereof. State ex rel. Beck v. City of York, *supra*.

The fifth contention is that Article XIII, section 2, Constitution of Nebraska, requires a vote of the electors before revenue bonds can be issued. That section provides as follows: "No city, county, town, precinct, municipality, or other subdivision of the state, shall ever make donations to any railroad, or other works of internal improvement, unless a proposition so to do, shall have been first submitted to the qualified electors thereof, at an election by authority of law. Provided, that such donations of a county with the donations of such subdivisions in the aggregate shall not exceed ten per cent of the assessed valuation of such county. Provided, further, that any city or county may, by a two-thirds vote increase such indebtedness five per cent in addition to such ten per cent; and no bonds or evidences of indebtedness so issued shall be valid, unless the same shall have endorsed thereon a certificate signed by the secre-

tary and auditor of state, showing that the same is issued pursuant to law."

In State ex rel. Beck v. City of York, *supra,* we held that revenue bonds, although not subject to payment through the exercise of the taxing power, were obligations of the issuing municipality; and that the money derived from the sale of the revenue bonds was public money and could not be expended for a private purpose. We also specifically held that the procedure now embraced in L. B. 159 violated Article XIII, section 3, Constitution of Nebraska.

Plaintiff argues that under Article XIII, section 2, Constitution of Nebraska, donations can be made only to aid in works of internal improvement, and that if the proposed project is not a work of internal improvement, no donation can be made. If it is a work of internal improvement, then the proposition must first be submitted to the qualified electors of the county. We suggest the amendment specifically provides: "The provisions of Article XIII, section 2, of the Constitution, shall not apply to the issuance of revenue bonds herein provided for." It is obvious that to hold the question of the issuance of the bonds must first be submitted to the qualified electors would be to strike this provision from the amendment.

Plaintiff argues that even conceding that the amendment specifically exempts the issuance of revenue bonds from submission to the voters, that does not exempt the application of Article XIII, section 2, Constitution of Nebraska, as to the donation of property acquired by the bonds without a vote of the people. This is based on the assumption that the sale of the property for a very nominal amount is in effect a donation of the property. This point will be discussed hereafter.

While it was not argued, there can be no question but that the effect of the amendment in this case is to give a private corporation substantial benefits through the offices of the county, which the county enjoys only by

virtue of being a governmental subdivision. The effect is to loan the credit of the county and its tax exempt status to a private corporation. In a sense also, there is a donation of a property, yet all this is specifically authorized by the amendment.

The third and fourth contentions have specific reference to the power of sale. The third contention states that the power of sale granted in L. B. 159 is not expressed in the title, and consequently the act is void under the provisions of Article III, section 14, Constitution of Nebraska, which provides, so far as material here: "No bill shall contain more than one subject, and the same shall be clearly expressed in the title." We have said on many occasions that this provision does not require that the title shall be a synopsis of the law. Maher v. State, 144 Neb. 463, 13 N. W. 2d 641.

We have also said the provisions of the Constitution relating to titles are to be so liberally construed as to admit of the insertion in a legislative act of all provisions which, though not specifically expressed in the title, are comprehended within the objects and purposes of the act as expressed in its title, and to admit all provisions which are germane, not foreign, to the provisions of the act as expressed in its title. See Affholder v. State ex rel. McMullen, 51 Neb. 91, 70 N. W. 544.

The title of L. B. 159 is as follows: "AN ACT relating to industrial development; to define terms; to provide for the acquisition, purchase, construction, reconstruction, improvement, betterment and extension of industrial development by cities, villages, and counties for the prescribed uses and purposes; to authorize and regulate the issuance of mortgages and revenue bonds for financing such industrial development as prescribed; to provide for payment of such mortgages and bonds; to provide for leasing of property; to provide for payment of taxes; to provide a construction clause; and to declare an emergency."

L. B. 159 contains the following: "Sec. 2. In addition

to any other powers which it may now have, each municipality and each county shall have without any other authority the following powers: * * * (4) To sell and convey any .real or personal property acquired as provided by subdivision (1) of this section, * * *."

We hold that the power to sell is comprehended within the objects and the purposes of the act as expressed in the title, and that there is no merit to contention No. 3.

Contention No. 4 raises the point that the amendment did not specifically mention the power to sell, so that L. B. 159 exceeds the authority granted by the amendment. We should not lose sight of the fact that the Constitution is not a grant but rather is a restriction on legislative power, and the Legislature may legislate upon any subject not inhibited by the Constitution. Swanson v. State, 132 Neb. 82, 271 N. W. 264.

We said in State v. Sheldon, 78 Neb. 552, 111 N. W. 372: "In the construction of a governmental system upon the American plan, the broad outlines are furnished by the constitution, but all the details necessary to carry the powers of government into effect are provided by the action of the legislature. The provisions of the constitution, while in one sense creative, also limit and define the powers to be exercised by the various departments of the government; but, except so far as its authority is limited or defined by the constitution, the legislature of the state is as fully vested with governmental powers as the British parliament. See a discussion of this subject in State v. Nelson, 34 Neb. 169."

Certainly the right of the Legislature to grant the power of sale of property to a municipality has not been inhibited by the Constitution, and there is no merit to plaintiff's fourth contention.

On the power to sell, however, there is a more arguable point inferentially involved and mentioned in plaintiff's brief. This is the fact that section 23-107, R. R. S. 1943, as amended by Laws of Nebraska, 1961, chapter

84, section 1, page 294, provides that the sale of property costing more than three thousand dollars, or the lease of property for a period of more than 10 years, shall not be made by a county board until such proposition shall have been approved by the electors of the county. We hold that the provisions of section 23-107, R. R. S. 1943, as amended, are not applicable to property acquired under L. B. 159.

The applicable rule is that where a legislative act is complete in itself but is repugnant to or in conflict with a prior law which is not referred to nor in express terms repealed by the latter, the earlier statute is repealed by implication as to the latter act, but only to the extent of the repugnancy or conflict. In re Estate of Grblny, 147 Neb. 117, 22 N. W. 2d 488.

We return now to plaintiff's contention that the sale, after the revenue bonds and costs are paid, of a three million dollar facility for five thousand dollars, is nothing more than a donation of public property, and that the inadequacy of the consideration is apparent on the face of the transaction. We do not doubt that there is involved in this transaction not only a donation of public property but the loan of public credit, as may be inferred from our opinion in State ex rel. Beck v. City of York, *supra*. Our problem is to determine whether it is within the limits now permitted by the amendment. In reviewing the lease and agreement, we find that Wander Company, in addition to the payments necessary to retire the bonds and pay all the costs, is obligated to make necessary repairs and replacements; to keep the property insured; to maintain public liability insurance to protect the county; and if the construction funds should prove insufficient, the Wander Company is to pay the deficiency directly to the contractor or the supplier. Also, the Wander Company may consent to the sale of the bonds for less than par, and if the county is unable to sell the bonds, the property is to be reconveyed to Wander Company by a quitclaim deed. It

should be evident to anyone reading the lease and agreement that the feature of county ownership is a sham. By the proposed lease, Wander Company leases the project for 25 years for an annual rental, subject to discharging the bonds and other obligations, and is given the option to purchase the project for five thousand dollars by paying off the bonds and paying all expenses. This arrangement permits it to acquire a plant with very little if any investment of its own capital. In addition, because the interest on county securities is exempt from federal income tax, the bonds will be sold at a lower rate than if issued by the corporation itself. Essentially what we have is a rental purchase arrangement which gives Wander Company the tax advantage of a sale and lease plan. When Wander Company buys at the nominal price of five thousand dollars after the bond issue has been retired, it has in effect amortized the complete cost of the project, including the cost of the land itself, in rental payments, which were deductible.

While we may still feel the financing of private enterprises with public funds is foreign to the fundamental concept of our constitutional system, as we said in State ex rel. Beck v. City of York, *supra,* the constitutional prohibition has been removed by amendment and it is now a part of our fundamental law.

We note that the amendment and the act provide that revenue bonds can never become a general obligation of the municipality. We suggest, however, that it is not beyond the realm of possibility that litigation could arise on this point. If the municipality were grossly negligent in the issuance of the bonds and it was clearly impossible for the project to succeed, the municipality might be required to defend an action for breach of an implied covenant of good faith. Misrepresentation, implied covenant or warranty, and breach of trust are additional theories through which attempts might be made to reach the taxing power. We are suggesting that the purpose of the act is to finance responsible enterprises

which actually will develop industry, and not to provide a method to finance irresponsible individuals or corporations with limited finances, permitting them to shift all of the risk to the bondholders.

Plaintiff's petition also alleges that section 8 of L. B. 159 does not subject the project to taxation to the same extent as private property, as required by the amendment. With this contention we must agree. Section 8 provides in part: "Notwithstanding that title to a project may be in a municipality or county, such projects shall be subject to taxation to the same extent, in the same manner, and under the same procedures as privately-owned property in similar circumstances, if such projects are leased to or held by private interests on both the assessment date and the date the levy is made in any year; but such projects shall not be subject to taxation in any year if they are not leased to or held by private interests on both the assessment date and the date the levy is made in any year; * * *." The amendment on this point provides as follows: "Any such real or personal property so acquired, owned, developed or used by any such county, city or village, shall be subject to taxation to the same extent as private property during the time it is leased to or held by private interests, notwithstanding the provisions of Article VIII, section 2, of the Constitution." It is apparent that L. B. 159 does not conform to the amendment, but that the tax provision in section 8 is more restrictive than that applying to private interests. It is evident that if a period had followed the words "private interests" in section 8, and the balance of the portion of the section set out above stricken or made to conform to the law affecting property held by private interests, it would comply with the amendment.

With reference to the property owned on assessment date, we held as follows in Wood v. McCook Water-Works Co., 97 Neb. 215, 149 N. W. 417, L. R. A. 1915C 125: "Did the sale of the property on July 1 to the city, cancel defendant's liability upon the assessment

because of the fact that after the property passed to the ownership of the city it thereafter would not be liable to taxation? We think the answer to this question must be adverse to defendant. The case is not different from what it would be if, after defendant had filed its schedule and the assessor had made the assessment, and while still owning the property, it had changed the use of it to a purpose which would relieve it from taxation. Such a change would not relieve it from liability. People v. Commissioners, 104 U. S. 466."

The power to tax is determinable as of the date the tax is levied. Lynch v. Howell, 165 Neb. 525, 86 N. W. 2d 364. In that case, property outside the limits of the city of Omaha was annexed to the city on July 19, 1956, 3 months after the assessor was required to complete the assessment, and the city tax was levied by the city taxing districts on August 9, 1956. We said: "The purpose of an assessment is to determine the ownership, quantity, and value of property for tax purposes as of the date fixed by statute, the date being March 1st under our present law. It involves no question of the power to tax. This was made clear in State ex rel. Hinson v. Nickerson, 99 Neb. 517, 156 N. W. 1039, wherein we said: 'There was no difference in that respect, and it was held that transferring the property to the city itself, which could not be taxed, did not relieve the company from payment of the tax for that year. It was held to be a question of ownership, and not a question of power to tax. Where it is a question of ownership, it is the ownership on April 1 that controls. When it is a question of power to tax, that power must exist when it is assumed to exert the power; that is, when the property is taxed. The property is taxed by the city when the city levies the tax.' "

Section 77-1211, R. S. Supp., 1959, as amended by Laws of Nebraska, 1961, chapter 381, section 5, page 1172, provides in part as follows: "Except as provided in sections 1 to 3 of this act, when any person shall bring

personal property into the state or from one county thereof to another county after 12:01 a.m. on January 1 and prior to July 1 in any year, it shall be the duty of the owner to list and return such property for taxation that year, unless he shall show to the county assessor or county clerk, where he is ex officio county assessor, under oath and by producing a copy of the assessment duly certified to, by the proper officer of the state or county in which said property was assessed, that the property has been listed for taxation for that year in some other county in this state, or in some other state or territory of the United States, or that such property has been received by him in exchange for money or property already listed for taxation during that year." Suppose the project was not leased by the county until after January 1, which is now the assessment date, and thereafter property was brought into the county before July 1 and turned over to the lessee under the lease. Under section 8 of L. B. 159, such property would not be subject to taxation. This does not subject the property to taxation to the same extent as private property during the time it is leased or held by private interests, as required by the amendment.

There are other situations which might be enumerated, but the above will suffice. The rule prescribed by our Constitution inhibits the Legislature from discriminating between taxpayers in any manner whatever. State ex rel. Cornell v. Poynter, 59 Neb. 417, 81 N. W. 431. We therefore hold that the following language in section 8 of L. B. 159: "* * * on both the assessment date and the date the levy is made in any year; but such projects shall not be subject to taxation in any year if they are not leased to or held by private interests on both the assessment date and the date the levy is made in any year" is clearly violative of the Constitution.

Does this invalidity void the entire act? The fact that a part of a law is invalid does not always require that the entire law be treated as void. If the part that

is bad is independent of and separable from the balance of the law, or if the invalid part was not an inducement to the passage of the act, or if the remainder of the act is not so connected with the invalid portion that it cannot be upheld without doing violence to the legislative intent as a whole or result in putting into effect a law which the Legislature would not have passed had its attention been called to the invalid parts, the portion of the act that is valid may be sustained and given effect. Wilson v. Marsh, 162 Neb. 237, 75 N. W. 2d 723. We held in that case that it is not the province of this court to annul a legislative act unless it clearly contravenes the Constitution and no other resort remains.

A basic rule in the interpretation of a statute is to ascertain the legislative intent and to give effect to it if it is a lawful one. There can be no question that the legislative intent of L. B. 159 was to provide an industrial development act within the terms of the amendment. Section 11 of L. B. 159 provides: "If any section in this act or any part of any section shall be declared invalid or unconstitutional, such declaration of invalidity shall not affect the validity of the remaining portions thereof." This declaration of separability is certainly a declaration of intent. It is an assertion by the Legislature that it would have passed the act with the invalid part omitted. The rest of the act is not in any sense dependent upon the part we hold to be invalid. In fact, the elimination of the invalid part conforms section 8 to the amendment, and clearly gives expression to the legislative intent. In Howell v. Fletcher, 157 Neb. 196, 59 N. W. 2d 359, we said that the legislative intent may be gathered from the reason for the enactment of the legislation in question. Here the reason is apparent, and the fact that the electors adopted a constitutional amendment to make it possible to effectuate that intent clearly removes even a shadow of a doubt.

No question has been raised as to the validity of the procedural steps in the adoption of the amendment, and

we have set out and discussed herein every contention as to the invalidity of L. B. 159 raised by the pleadings. We have restricted ourselves to the actual points presented, and have not undertaken to examine or to analyze at length the lease and agreement or the exhibits attached to the plaintiff's petition, except insofar as they were actually involved in the objections presented. As thus restricted, we find no merit to the plaintiff's petition other than as to the portion of the act which we have found to be invalid.

For the reasons detailed above, the demurrer of the defendants is sustained.

DEMURRER SUSTAINED.