JAMES CHASE, APPELLANT, v. COUNTY OF DOUGLAS, NEBRASKA, ET AL., APPELLEES.

241 N. W. 2d 334

Filed April 21, 1976. No. 40407.

August P. Ross and Bruce G. Mason, for appellant.

Donald L. Knowles, Roger R. Holthaus, Herbert M. Fitle, Verne W. Vance, and D. Nick Caporale and Michael A. Nelsen of Schmid, Ford, Mooney, Frederick & Caporale, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

CLINTON, J.

This is a class action by a taxpayer of the City of Omaha, County of Douglas, which challenges the constitutionality of section 18-1401, R. R. S. 1943, upon the ground that it violates Article XIII, section 3, of the Constitution of Nebraska, which in pertinent part provides: "The credit of the state shall never be given or loaned in aid of any individual, association, or corporation . . . ." After the plaintiff had filed an amended petition and the defendants, Greater Omaha Chamber of Commerce, the County of Douglas, and the City of Omaha, had filed their answers, the defendants jointly moved for judgment on the pleadings. The District Court acted upon the motion, found the statute constitutional, and granted judgment on the pleadings. The plaintiff appeals. We find the statute constitutional in part and unconstitutional in part, and reverse and remand for further proceedings.

Section 18-1401, R. R. S. 1943, is as follows: "The city commissioners or council of any city, the board of trustees of any village, and the county board of any county in the state shall have the power to appropriate or expend annually from the general funds or from revenue received from any proprietary functions of their respective political subdivision an amount not to exceed one per cent of the assessed valuation of the city, village, or county for the purpose of encouraging immigration, new industries, and investment and to conduct and carry on a publicity campaign, including a publicity campaign conducted for the purpose of acquiring from any source a municipal electrical distribution system, exploiting and advertising the various agricultural, horticultural, manufacturing, commercial, and other resources, including utility services, of the city, village, or county, purchasing real estate suitable for in-

dustrial development, acquiring options on real estate suitable for industrial development, and renewing or extending such options, paying for such real estate or options with funds provided for in this section, with the amounts paid for any such option to be taken as part payment of the purchase price of any such option if the option be exercised. Such sum may be expended directly by the city, village, or county or may be paid to the chamber of commerce or other commercial organization or a similar county organization or multicounty organization or local development corporation to be expended for the purposes herein enumerated under the direction of the board of directors of said organization; . . . ." The original version of the above section of the statute was enacted in 1921 and then pertained only to municipalities. In 1969 it was amended to include counties. In 1972 the statute was again amended and at that time the following language was introduced for the first time: "purchasing real estate suitable for industrial development, acquiring options on real estate suitable for industrial development, and renewing or extending such options, paying for such real estate or options with funds provided for in this section, with the amounts paid for any such option to be taken as part payment of the purchase price of any such option if the option be exercised." At that time also the amount authorized to be expended was increased to the present "one per cent of the assessed valuation" from the previous "one-tenth of one per cent."

The plaintiff's attack upon the constitutionality is essentially that the statute in its broadest scope authorizes public funds to be used for private purposes, and that its constitutionality must be judged on what is authorized to be done and not merely on the basis of what actually is sought to be done by the parties. City of Beatrice v. Wright, 72 Neb. 689, 101 N. W. 1039. In Summerville v. North Platte Valley Weather Control Dist., 170 Neb. 46, 101 N. W. 2d 748, we said: "In de-

termining whether any legislation is valid, it is proper to examine and ascertain what may be done or accomplished pursuant to said legislation." The plaintiff argues unconstitutionality of the provision which authorizes payment of money to the chamber of commerce and similar organizations for the purposes described in the statute. However, he lays particular stress upon the vulnerability of the provision which authorizes such organizations, wholly without any statutory guidelines or restrictions, to purchase with public funds real estate suitable for industrial development and to acquire options on real estate for industrial development.

Since the matter was determined by the trial court upon motion for judgment on the pleadings, we analyze the pleadings guided by the following principle: "A motion for judgment on the pleadings, like a demurrer, admits the truth of all well-pleaded facts in the pleadings of the opposing party, together with all reasonable inferences to be drawn therefrom. The party moving for judgment on the pleadings necessarily admits, for the purpose of the motion, the untruth of his own allegations insofar as they have been controverted. Board of Trustees of York College v. Cheney, 160 Neb. 631, 71 N. W. 2d 195. A motion for judgment on the pleadings does not waive a trial on disputed issues of fact." Wittler v. Baumgartner, 180 Neb. 446, 144 N. W. 2d 62.

The amended petition alleges: The plaintiff is a resident and taxpayer of the City of Omaha and County of Douglas; the defendants city and county have in the past made gifts of public funds to the Greater Omaha Chamber of Commerce (hereinafter referred to as the chamber); the county has recently authorized a gift of $50,000 to the chamber and the donations have been purportedly made under the authority of section 18-1401, R. R. S. 1943; public funds have been commingled with other funds in the treasury of the chamber; and the county and the city have refused to take any action to recover the funds transferred. Plaintiff's amended petition fur-

ther asks that section 18-1401, R. R. S. 1943, be declared unconstitutional as being in conflict with Article XIII, section 3, of the Constitution of Nebraska; the transfer of the $50,000 by the county be restrained; and the chamber be required to account for and return all funds given by the city and county under section 18-1401, R. R. S. 1943. The answer of the chamber admits the city and the county have expended, through the chamber as their agent, funds received and have paid certain debts incurred by the chamber for the purposes of section 18-1401, R. R. S. 1943; and denies any funds received from the city or county have been commingled with other funds belonging to the chamber, but alleges that such funds have, in fact, been deposited in a separate "Economic Development Council" account and used solely for the purposes authorized by section 18-1401, R. R. S. 1943. The answer of the County of Douglas admits that on November 20, 1973, it paid $50,000 to the economic development program of the chamber for the purposes of section 18-1401, R. R. S. 1943, and on December 10, 1974, it authorized payment of $50,000 for the same purposes. The answer of the City of Omaha admits that it made an appropriation of $22,874 from the 1972 mayor's special city promotional account for payment to the chamber as agent for the city for the purposes specified in sections 18-1401 and 14-102(36), R. R. S. 1943, and that it thereafter in January of 1973 paid $14,526.40 from said appropriation to the chamber "as reimbursement to it for a portion of the sums it had expended for the aforesaid purposes"; that on March 6, 1973, the city appropriated the sum of $50,000 for the purposes described in the aforementioned statutes and on April 9, 1973, pursuant to the terms of a written agreement made on April 2, 1973, between the city and the chamber, paid $50,000 to the chamber, which sum has been expended by the chamber for the purposes set forth in the statutes; that the city had, on February 12, 1974, by ordinance, transferred to its housing and com-

munity development department the sum of $50,000 for the purposes specified in sections 18-1401 and 14-102(36), R. R. S. 1943, and further paid $32,509.25 to various entities for services and materials agreed to by the chamber and the city economic development department; that the city expended directly the sum of $10,490.75 for like purposes; that $4,500 of the $50,000 appropriated was separated for travel by the economic development division's own personnel; that the city paid $2,500 of the appropriation toward the design of the "Iowa-Nebraska Bi-Centennial Friendship Fountain"; all in furtherance of the purposes specified in sections 18-1401 and 14-102(36), R. R. S. 1943. The latter statute authorizes cities of the metropolitan class "to appropriate money for the purpose of advertising the resources and advantages of the city."

Pursuant to a request by the plaintiff for admissions, the defendants admitted that the city and the county had refused to take any action for recovery of funds from the chamber and that a demand upon those entities for such action would be of no avail.

The plaintiff filed no reply to the answers of the defendants and the well-pleaded, affirmative allegations of the answers therefore stand admitted.

Under this posture of the case the constitutionality of the statute could be determined on the pleadings. The trial court found: "(B) Generally for defendants and against plaintiff and that § 18-1401, R. R. S., 1943

"(a) is within the power of the Nebraska Legislature to enact:

"(b) contemplates expenditures for a public purpose and does not violate Sec. 3, Art. XIII of the Nebraska Constitution;

"(c) provides reasonable standards to guide expenditure of the funds; and,

"(d) is constitutional."

For reasons we hereafter discuss under the heading Publicity, we find that the provision authorizing ex-

penditures "for the purpose of encouraging immigration, new industries, and investment and to conduct and carry on a publicity campaign, including a publicity campaign conducted for the purpose of acquiring from any source a municipal electrical distribution system, exploiting and advertising the various agricultural, horticultural, manufacturing, commercial, and other resources, including utility services," is constitutional, including the provision for making such expenditures by and through chambers of commerce and the other organizations listed in the statutes. We find that the provisions of the statute authorizing expenditures, whether directly by city or county or through the chamber of commerce or other listed organizations, for the purpose of acquiring real estate or options thereon for industrial development is unconstitutional and in violation of Article XIII, section 3, of the Nebraska Constitution, because it permits the lending of the credit, as that term has been previously interpreted, of the city and the county to an individual, association, or corporation. We will develop the reasons for such holding hereafter under that part of our opinion headed Real Estate for Industrial Development. We further hold that the unconstitutional provisions of the statute are separable for reasons which we discuss under the heading Severability.

## I
### Publicity

Our conclusion that the particular language of section 18-1401, R. R. S. 1943, earlier referred to, describes a public purpose and authorizes a method of expenditure of public funds not in conflict with Article XIII, section 3, of the Nebraska Constitution, and rests upon two propositions already clearly established by our previous holdings and upon an additional principle approved by dicta of this court and supported by on-point authority from other jurisdictions.

The first proposition is that it is for the Legislature to decide in the first instance what is and what is not

a public purpose, but its determination is not conclusive on the courts. However, to justify a court in declaring a tax invalid because it is not for a public purpose, the absence of public purpose must be so clear and palpable as to be immediately perceptible to the reasonable mind. State ex rel. Douglas County v. Cornell, 53 Neb. 556, 74 N. W. 59. The second proposition is that the general encouragement of growth and industry through such devices as publicity and advertising are public purposes. State ex rel. Douglas County v. Cornell, *supra;* Power Oil Co. v. Cochran, 138 Neb. 827, 295 N. W. 805. In the case first cited, a statute authorizing the issuance of bonds by a county for the purpose of participating in the Trans-Mississippi and International Exposition of 1898 was held a public purpose. The court in that case indicated that municipal publicity and the general encouragement of growth and industry were public purposes. In Power Oil Co. v. Cochran, *supra,* we, in upholding as a valid exercise of legislative power the establishment of an "Advertising Commission," said: ". . . legislative power exists to make expenditures for advertising which is for the public benefit." We therefore hold that the language of section 18-1401, R. R. S. 1943, which we are now discussing, describes a public purpose.

The next question to be answered is whether the purpose may be accomplished by expending the funds through the private organizations specified in the statute. In United Community Services v. Omaha Nat. Bank, 162 Neb. 786, 77 N. W. 2d 576, this court had before it the constitutionality of sections 14-1106 and 14-1107, R. R. S. 1943, which authorized public power districts to make contributions to a community chest provided certain conditions were met. The court held the statute unconstitutional on grounds other than Article XIII, section 3, but went on to answer other objections of unconstitutionality and to hold that the purposes served by such donations were public purposes and did not violate Article XIII, section 3, saying " ' ". . .

authorities clearly settle that the vital point in all such appropriations [by governmental subdivisions to private concerns] is whether the purpose is public; and that, if it is, it does not matter whether the agency through which it is dispensed is public or not; that the appropriation is not made for the agency, but for the object which it serves; the test is in the end, not in the means." . . . .' " There we also said: " 'No hard and fast rule can be laid down, for in determining whether a proposed expenditure of public funds is valid as devoted to a "public use or purpose" each case must be decided with reference to the object sought to be accomplished and to the degree and manner in which that object affects the public welfare.' "

The language describing purposes in section 18-1401, R. R. S. 1943, is quite specific. It is readily apparent that the benefit of the broad scope of these purposes redounds to the public generally and not to particular organizations or individuals. Benefit which may result to the latter is only the incidental benefit which generally attaches in most public welfare legislation. Cases from other jurisdictions which support the accomplishment of such public purposes through private organizations are Sacramento Chamber of Commerce v. Stephens, 212 Cal. 607, 299 P. 728 (entertainment of public guests, encouraging immigration, exhibition of products, and printing and distribution of pamphlets advertising the city); and Davis v. City of Taylor, 123 Tex. 39, 67 S. W. 2d 1033 (expenditures through a board of city development to promote "growth, advertisement, development, improvement and increase of the taxable values of said city").

The plaintiff argues that once the funds are paid to the organization the city loses control. As the trial court appropriately found, the purposes of the statute are specific and control of the expenditures by the city may be assured through contract and accounting, suit for refund, or other appropriate means, if the organiza-

tion should use the money for an unauthorized purpose.

## II

### Real Estate for Industrial Development

When we consider the provisions of the statute authorizing the expenditure of funds for the acquisition of real estate for industrial development, we are confronted with a quite different set of circumstances. Before real estate can be effectively used for industrial development, it must first in some way come into the use and possession of the private persons or entities which may engage in industry. A municipal corporation has only those powers which are granted in express words, those which are necessarily or fairly implied in or incidental to powers expressly granted; and those which are essential to the objects and purposes of the corporation. Jacobs v. City of Omaha, 181 Neb. 101, 147 N. W. 2d 160. We have been directed by the defendants to no statutes which authorize cities or counties to engage generally in operation of an industry.

Our conclusion is that the authority of a municipality or county to use public funds to own, acquire, develop, lease, and sell real and personal property for industrial development purposes is measured by the provisions of Article XIII, section 2, of the Nebraska Constitution, and the enabling statutes lawfully enacted by the Legislature pursuant to the foregoing provision of the Constitution. State ex rel. Meyer v. County of Lancaster, 173 Neb. 195, 113 N. W. 2d 63; State ex rel. Beck v. City of York, 164 Neb. 223, 82 N. W. 2d 269; §§ 18-1614 to 18-1623, R. R. S. 1943 (Industrial Development Act).

In State ex rel. Beck v. City of York, supra, we held that the original Industrial Development Act, sections 18-1601 to 18-1613, R. R. S. 1943 (Reissue 1954), which authorized the issuance of revenue bonds by certain governmental subdivisions for the purposes of industrial development violated Article XIII, section 3, of the Constitution, because it permitted the loan of the credit of the state to an individual, association, or corporation.

Following our opinion in that case, Article XV, section 16, now Article XIII, section 2, was enacted by vote of the people. This provision of the Constitution specifically authorizes the Legislature to give counties and cities authority to acquire real and personal property for industrial development and to issue revenue bonds supported by a mortgage on the property and pledges of rentals from the property for the purpose of paying the principal and interest of the bonds. Section 2 specifically provides that the bonds shall not become general obligations of the city or county. That constitutional amendment further provides: "No such governmental subdivision shall have the power to operate any such property as a business or in any manner except as the lessor thereof." Pursuant thereto the Legislature, in 1961, enacted the present Industrial Development Act. This act, with one exception not pertinent here, was held to be constitutional in State ex rel. Meyer v. County of Lancaster, *supra*.

The constitutionality of section 18-1401, R. R. S. 1943, either in its original form or as amended in 1972, has not been heretofore challenged. Section 18-1401, R. R. S. 1943, clearly purports to authorize the acquisition of real estate for industrial development purposes by the use of tax money and income from proprietary functions. For reasons already noted, it is evident that the use of the property for industrial development purposes cannot be accomplished so long as the use and possession of the property remains in the municipality.

It needs very little elaboration to demonstrate that under the procedure of section 18-1401, R. R. S. 1943, the credit of the municipality is loaned to some individual, association, or corporation. This results in capital being furnished by the city or county for private use. The real estate so acquired may decrease in value, and the loss is that of the municipality because funds or proprietary income are the sources of the capital.

If the property increases in value the benefit of the increase and thus of the capital furnished will pass to the private person. Even if title is held by the city or county, this would still be true.

When the Legislature submitted to the people the constitutional amendment which became Article XIII, section 2, of the Constitution, and when the people voted thereon, they were, of course, aware of the scope of the holding of this court in State ex rel. Beck v. City of York, *supra*. It seems clear, therefore, that Article XIII, section 2, is the full measure of the power of the state through the cities and counties to lend the credit of the state. Article XIII, section 3, remains in the Constitution and under its terms any loan of credit made by the state, by a county, or by a municipality to a private individual, association, or corporation is unconstitutional. State ex rel. Beck v. City of York, *supra*. The one exception to the above principle is that a loan of credit may be made by a county or municipality if the loan of credit is made under enabling legislation that complies with the requirements of Article XIII, section 2, of the Constitution. State ex rel. Meyer v. County of Lancaster, *supra*. The purchase by a municipality of property for industrial development under the provisions of section 18-1401, R. R. S. 1943, clearly does not comply with the provisions of Article XIII, section 3, of the Constitution, because it authorizes the use of tax money and income of the subdivision from its proprietary functions for the purposes.

Defendants argue that the constitutional provision just mentioned expressly provides that the acquisition of real and personal property for industrial development is a public purpose. They say, therefore, that this ratifies the provisions of section 18-1401, R. R. S. 1943, here being discussed. They overlook, however, the fact that Article XIII, section 2, does not authorize the use of tax or proprietary funds for the purpose of extending

credit and that this section, when construed with section 3, constitutes, in effect, a prohibition against such use.

## III

## Severability

The plaintiff urges that if any part of the statute is unconstitutional the whole statute must fall. We have had occasion many times to consider the principles under which portions of the statute may be held unconstitutional and yet the remainder of the statute stand. In State ex rel. Meyer v. County of Lancaster, *supra,* we were called upon to determine the severability of a portion of the Industrial Development Act relating to the partial exemption from taxation of property acquired by a city or a county for industrial development purposes. We there held that the exemption provision was unconstitutional, but that since it was severable, the remainder of the act was constitutional. The applicable principles were stated in the following language: "Does this invalidity void the entire act? The fact that a part of a law is invalid does not always require that the entire law be treated as void. If the part that is bad is independent of and separable from the balance of the law, or if the invalid part was not an inducement to the passage of the act, or if the remainder of the act is not so connected with the invalid portion that it cannot be upheld without doing violence to the legislative intent as a whole or result in putting into effect a law which the Legislature would not have passed had its attention been called to the invalid parts, the portion of the act that is valid may be sustained and given effect. Wilson v. Marsh, 162 Neb. 237, 75 N. W. 2d 723." In that case, however, the statute in question contained a severability clause as follows: " 'If any section in this act or any part of any section shall be declared invalid or unconstitutional, such declaration of invalidity shall not affect the validity of the remaining portions thereof.' " The Industrial Development Act does not contain a legis-

lative declaration of severability. Where such a clause is not present, we have held: ". . . a severability clause is merely an aid to construction and not an inexorable command. A severability clause in a statute is not a condition precedent to a determination of the question of severability." Tom & Jerry, Inc. v. Nebraska Liquor Control Commission, 183 Neb. 410, 160 N. W. 2d 232. See, also, 2 Sands, Sutherland Statutory Construction (4th Ed., 1973), § 44.09, p. 353, where it is said: "The presumption against separability in absence of a separability clause is a weak one. On the side of separability even in such cases, the Supreme Court has noted that 'the cardinal principle of statutory construction is to save and not to destroy.'" See, also, Tilton v. Richardson, 403 U. S. 672, 91 S. Ct. 2091, 29 L. Ed. 2d 790. In Tom & Jerry, Inc. v. Nebraska Liquor Control Commission, *supra*, we said: "Where it appears that an unconstitutional portion of an act can be separated from the valid portions and the latter enforced independent of the former, and it further appears that the invalid portion did not constitute such an inducement to the passage of the valid parts that they would not have passed without them, the former may be rejected and the latter upheld."

It is self-evident that the provisions of the 1972 amendment to the statute which authorized acquisition of real estate for industrial development could have constituted no part of the inducement for the provisions we have already discussed under the heading Publicity since the latter provisions were already in existence. The plaintiff, however, makes an argument more difficult to answer. He points out that when section 18-1401, R. R. S. 1943, was amended in 1972 to permit the purchase of real estate for industrial development, the Legislature also raised the amount of money that was authorized to be used by increasing it from one-tenth of one percent to one percent of the assessed valuation. He

further argues that the reason the additional funds were authorized was for the specific purpose of the acquisition of land for industrial development. He also states that clearly the industrial development purpose was the inducement behind the provision for increased funding and thus the funding provision must fail because the Legislature clearly would not have enacted the industrial development language at all if there were no provision for funding. The next step in his argument is that under the principles governing the determination of severability there is no way the court can restore the one-tenth of one percent provision and therefore the whole statute must fall.

There are some indications contained in the committee discussion of the 1972 amendment that the increase in funding was authorized to make more practicable the acquisition of real estate for industrial development. On the other hand, the 1972 amendment placed no restriction (other than the overall limitation) on what can be used for publicity and what can be used for industrial land acquisition. In other words, the municipality was free to use all for publicity, or all for land acquisition, or to divide it any way it saw fit. Floor discussion immediately prior to final enactment seems to make this reasonably clear. As we have already noted in connection with our previous discussion of the canons of construction, "the cardinal principle of statutory construction is to save and not to destroy." It seems to us that we can "without doing violence to legislative intent" hold the provision for funding separable from that of real estate acquisition. We hold, therefore, the provision for real estate acquisition was not the exclusive inducement for the increased funding provision and that they are therefore severable.

The record in this case does not disclose whether any of the funds transferred to the defendant chamber by the city and county have, in fact, been used for the un-

constitutional purpose of land acquisition for industrial development.  We cannot therefore determine whether the plaintiff is entitled to any further relief.  This will have to be determined on remand.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.