REQUESTED BY: Dear Senator Beutler:
In your letter of January 16, 1980, you call to our attention Legislative Bill 507 dealing generally with the revitalization of branch railroad lines in Nebraska and seek our opinion as to the constitutionality of several of this act's provisions.
Generally this legislation would create a Branch Rail Revitalization Council composed of industry, government and general public representatives and would carry out the intentions of the act including assisting Regional Councils in financing local branch line revitalization projects in certain specified manners. This legislation would also create a Branch Rail Line Revitalization Fund in the State Treasury into which any monies appropriated by the Legislature for the purposes of the act would be placed in addition to any other monies received from other sources. Additionally, the act would provide for the formulation of certain Regional Branch Rail Line Councils consisting of counties, cities, villages, combinations of political subdivisions and other persons interested in the revitalization of branch rail lines. These Regional Councils would devise specific local revitalization plans and would be authorized to issue regional bonds for the purpose of financing these plans.
You first ask whether or not the creation of such a `state agency' the purpose of which would be to receive and distribute state funds for the restoration of privately owned property is constitutional. Initially we question your categorization of this Branch Rail Revitalization Council as a `state agency.' The only such reference we can find within this legislative bill is in section 13 where the following language is found:
 ". . . The council shall be the agency responsible for administering programs and funds for rail line revitalization implemented pursuant to this act. . . ." (Emphasis added.)
We are not certain that the Legislature may, through such a passing reference to the term `agency' create an entity which would be considered a `state agency.' It is more likely that what is being created here is not a state agency but rather a public or quasi-public corporation. However, if you are correct in your conclusion that this entity is a state agency, it would be only permitted to issue bonds in an amount less than one hundred thousand dollars which were issued solely for the purpose of meeting, `. . . casual deficits, or failures in the revenue, . . .' or be in violation of the provisions of Article XIII, section 1 of the Constitution of the State of Nebraska.
Assuming that this Branch Rail Revitalization Council is not a state agency but is in reality a public or quasipublic corporation, the question remains whether or not the Legislature might expend funds to effectuate its purposes. We would be of the opinion that the resolution of this question lies in the examination of the issue as to whether or not a public purpose is being advanced by its creation and funding.
The Nebraska Supreme Court in two recent cases has had an occasion to discuss what constitutes public purpose. InState ex rel. Douglas v. Nebraska Mortgage Finance Fund,204 Neb. 445, 283 N.W.2d 12 (1979), the court stated as follows:
 "What is a public purpose is primarily for the Legislature to determine. A public purpose has for its objective the promotion of the public health, safety, morals, security, prosperity, contentment, and the general welfare of all the inhabitants. No hard and fast rule can be laid down for determining whether a proposed expenditure of public funds is valid as devoted to a public use or purpose. Each case must be decided with reference to the object sought to be accomplished and to the degree and manner in which that object affects the public welfare . . . [citations omitted.] It is the province of the Legislature to determine matters of policy and appropriate the public funds. If there is reason for doubt or argument as to whether the purpose for which the appropriation is made is a public or a private purpose, and reasonable men might differ in regard to it, it is essentially held that the matter is for the Legislature. . . [citations omitted.]" 204 Neb. at 457, 458.
The court in State ex rel. Douglas v. Thone, 204 Neb. 836, N.W.2d (1979), held as follows:
 "The principles which must guide this court in the determination of whether the act contemplates a public purpose are these: `It is for the Legislature to decide in the first instance what is and what is not a public purpose, but its determination is not conclusive on the courts. However, to justify a court in declaring a tax invalid because it is not for a public purpose, the absence of public purpose must be so clear and palpable as to be immediately perceptible to the reasonable mind.' Chase v. County of Douglas, . . . [195 Neb. 838, 241 N.W.2d 334]." 204 Neb. at 843.
After setting forth examples where that court had found a valid public purpose and examples where they had not, they specifically held as follows:
 ". . . Competition with private industry does not in and of itself make the expenditure one for a private purpose. The fact that the plants and facilities may be managed by private corporations or individuals under management contracts does not make the purpose private. This is clearly a case in which the court cannot say the legislative determination of public purpose is incorrect." State ex rel. Douglas v. Thone, 204 Neb. at 845.
It appears to us from an examination of Legislative Bill 507 and an examination of the recent decisions of the Nebraska Supreme Court that this legislation may well satisfy the requirement that it fulfill a valid public purpose, however, we caution you that the court did state that while a legislative declaration of public purpose carries with it certain presumptions of validity, such a declaration is not conclusive on the court. State ex rel. Douglas v. Thone,supra.
In this regard we suggest that the avowed stated purpose of this legislation is extremely broad and manifests itself only in general concepts such as revitalization and the formulation of plans. It may be difficult in light of the most general direction given to both the statewide council and the various regional councils for a court to ascertain the exact purpose of this legislation let alone the validity of that purpose.
You next ask in light of the language of section 20 of Legislative Bill 507 which directs that each Regional Council shall be a, `political subdivision of the state' whether or not this designation is proper given the fact that these Councils will be made up of other political subdivisions and, `. . . any other person which desires to revitalize a branch rail line.' (section 20). While it appears somewhat irregular for a political subdivision to consist of entitles which are not political in and of themselves, we do not believe that the inclusion within this designated `political subdivision' of persons, which are defined in section 8 as `. . . any corporation, partnership, joint venture, unincorporated association or other business entity, or natural person' would necessarily result in any violation of our Nebraska Constitution.
It does appear that as a result of the inclusions within this entity of these nonpolitical entities that designating it a `political subdivision' is probably a misnomer and may very well result in unnecessary confusion and possible litigation. It would appear as though the private entities could either be eliminated from the Regional Council and the resulting political subdivisions combined under the Interlocal Cooperation Act, sections 23-2201, et seq., or section 20 could be amended to delete the political subdivision classification and these Regional Councils could also be designated public or quasi-public corporations.
If these Regional Councils are to remain political subdivisions we do warn you of the provisions of Article XI, section 1 of the Constitution of the State of Nebraska, which provides:
 "No city, county, town, precinct, municipality, or other subdivision of the state, shall ever become a subscriber to the capital stock, or owner of such stock, or any portion or interest therein of any railroad, or private corporation, or association." (Emphasis added.)
We call this provision to your attention because of the provisions of this legislation which would permit Regional Councils to secure guarantees of their obligations incurred and to pledge any collateral they might possess to secure the obligations issued by the Regional Councils. It is conceivable that some railroad, private corporation or association might supply stock as collateral for bonds issued by the Regional Councils or might actually provide stock to generate money to be placed in the Branch Line Revitalization Fund or for the operation of the Regional Councils. While the potential inclusion within a Regional Council of a railroad, corporation, or association would not in and of itself appear to violate the provisions of ArticleXI, section 1 of the Nebraska Constitution, great care would have to be exercised as to their financial relationship to the Council itself.
You also ask whether or not the use of state appropriated funds for the administrative costs of such subdivisions, some members of which may be private entities, is unconstitutional. We believe that regardless of the exact legal status of these Regional Councils, the question is basically one of whether or not monies appropriated are for a public purpose. If a public purpose is to be achieved then we feel that no constitutional violation would exist.
Additionally you ask whether or not the issuance of bonds by a political subdivision and the use of tax monies for the purpose of improving privately owned property is constitutional.
We believe the answer to this question also lies in the resolution of the question of whether or not this act advances a valid public purpose.
Next you call to our attention the fact that a particularly Regional Council might revitalize branch lines which are not physically within their geographical boundaries and ask if this would render such a provision unconstitutional. We do not believe that the fact that the act's effect would exceed the geographical limits of any of the Regional Councils would have any constitutional affect so long as whatever was done was done to advance a general public purpose.
You next ask if the Regional Councils default on any bonds issued, whether or not the state would be ultimately liable to these bondholders. We would be of the opinion that if the state were to be liable this legislation would fail as did the legislation in State ex rel. Douglas v.Thone, supra, as being violative of either Article XIII, section 1, or Article XIII, section 3, or both, of the Constitution of the State of Nebraska. It does appear, however, from the actual language of the legislation both in section 15 and section 22 that there is no intent to bind the state or to make the state guarantors of any of the bonds issued by either the Branch Rail Revitalization Council or the various Regional Councils. We would be of the opinion, however, that to insure the successful review of this legislation by a court stronger language, even than that utilized, perhaps should be inserted to establish legislative intent that the State of Nebraska was under no circumstances to be considered liable as a result of the issuance of any of these bonds.
Finally, we call to your attention the fact that the act provides that from a number of different sources monies are to be placed in the Rail Line Revitalization Fund (section 18). However, in section 19(2) it appears as though the Branch Rail Revitalization Council is being given authorization to spend monies placed in this fund for certain activities. We would be of the opinion that once monies are placed in this fund which is a part of the State Treasury, they may only be withdrawn through the means of legislative appropriation. Perhaps this fact was known to the drafters of this legislation but it appears as though the expectation was that the Council might draw upon this fund for its own administration and other needs. While the Legislature could, for a public purpose, appropriate monies out of this fund to the Branch Rail Revitalization Council or Regional Councils, these Councils would not be empowered to spend the monies absent such a specific appropriation. You may wish to consider this fact if any amendments are to take place.
If we can be of further assistance to you in this matter, please let us know.