REQUESTED BY: Senator LaVon Crosby Nebraska State Legislature
You have requested our opinion regarding the constitutionality of LB 799. This proposed legislation, including AMO653, would create "a body politic and corporate, not a state agency, but an independent instrumentality exercising essential public functions" to be known as the Cultural Trust. A Cultural Trust Fund would also be created which would be administered by five trustees selected and approved by the Nebraska Arts Council and the state affiliate of the National Endowment for the Humanities. The trust fund would consist of revenue from public and private sources with only the earnings used for the operations of the Nebraska Arts Council and the state affiliate of the National Endowment for the Humanities and their constituent organizations. LB 799 also states the intent to appropriate $12,500,000 in each of the next two fiscal years to the Nebraska Arts Council to fund the public portion of the Cultural Trust. That appropriation is to be returned to the general fund by the Cultural Trust in fiscal year 2023-24.
Your specific concerns are with Article XIII, section 3 of the Nebraska Constitution which prohibits lending the credit of the State and Article III, section 18 of the Nebraska Constitution which prohibits special legislation or the granting of special privileges and immunities. We will also discuss Article XII, section 1 which prohibits the creation of a single corporation by special law.
I. Article XIII, Section 3
We will first address whether LB 799 violates the provision of the state constitution which mandates that "[t]he credit of the State shall never be given or loaned in aid of any individual, association, or corporation. . . ." Neb. Const. Art.XIII, section 3.
The case of Haman v. Marsh, 237 Neb. 699, 467 N.W.2d 836
(1991), is a recent Nebraska Supreme Court decision which interprets Article XIII, § 3 of the Nebraska Constitution. At issue in Haman was legislation which appropriated state tax money to compensate depositors who had suffered losses due to the failure of industrial loan and investment companies in Nebraska. The Nebraska Supreme Court set out a three-prong test, and stated that to establish a law was unconstitutional under Article XIII, § 3, a plaintiff had to prove each of the following elements: (1) The credit of the state (2) was given or loaned; (3) in aid of any individual, association, or corporation. Haman,237 Neb. at 719.
The threshold question which must be analyzed is whether the proposed amendments to LB 609 involve the "credit of the state." In Haman, the court stated as follows: "There is a distinction between the loaning of state funds and the loaning of the state's credit. When a state loans funds it is in the position of creditor, whereas the state is in the position of debtor upon a loan of credit." Id. at 719-720. In Haman, the court found that under the legislation in question, "the state would be forever liable for the losses of industrial company depositors. . . ."Id. at 720.
To the extent that LB 799 provides for a grant or loan of state funds to be repaid in fiscal year 2023-24, it does not appear to us that such provisions result in the state being either a surety or guarantor of another's debts. Rather, the State would be in the position of creditor. Therefore, we conclude that LB 799 does not violate Article XIII, § 3.
Although the "credit of the state" is not being given or loaned under the provisions of LB 799, the constitutional analysis does not end there. "Closely related to the prohibition against the giving or lending of the state's credit . . . is the principle of law that public funds cannot be expended for private purposes." Haman v. Marsh, 237 Neb. 699 at 721-722. This constitutional principle involves the expenditure of state funds in contrast to the extension of credit. While the state constitution contains no express provision against expending funds for essentially private purposes, the Nebraska Supreme Court has stated that this principle "is grounded on the `fundamental concepts of our constitutional system.'" State exrel. Douglas v. Thone, 204 Neb. 836, 842, 286 N.W.2d 249 (1979) (quoting Beck v. City of York, 164 Neb. 223).
There is no hard and fast rule for determining whether a proposed expenditure of public funds is for a public purpose. InPlatte Valley Public Power Irrigation District v. County ofLincoln, 144 Neb. 584, 14 N.W.2d 202 (1944), the Nebraska Supreme Court discussed the parameters of a "public purpose." "A public purpose has for its objective the promotion of the public health, safety, morals, security, prosperity, contentment, and the general welfare of all the inhabitants." Id. at 589.
The Nebraska Supreme Court has held that it is for the Legislature to determine in the first instance what is and what is not a public purpose. State ex rel. Douglas v. Thone,204 Neb. 836, 286 N.W.2d 249 (1979). The Court also held therein that there is no requirement that a legislative act calling for the expenditure of public funds need contain an express declaration of public purpose. Id. at 844-845. A number of cases from our Supreme Court have evidenced a somewhat flexible interpretation of the public purpose doctrine in relation to the expenditure of state monies. For example, with regard to housing, the Court found constitutional the act creating the Housing Authority of the City of Omaha in Lennox v. Housing Authority of City ofOmaha, 137 Neb. 582, 290 N.W. 451 (1940), and found constitutional the act creating the Nebraska Mortgage Finance Fund in State ex rel. Douglas v. Nebraska Mortgage Finance Fund,204 Neb. 445, 283 N.W.2d 12 (1979). The Court considered legislative findings such as the need for safe and sanitary housing and the need for adequate housing which could be financed by low income people in determining the existence of a public purpose.
However, the Nebraska Supreme Court has also held that laws which authorize the expenditure of state funds to encourage private enterprises do not serve a public interest. A statute offering compensation or a bounty to private companies to encourage the manufacture of sugar and chicory was found unconstitutional in Oxnard Beet Sugar Co. v. State, 73 Neb. 57
(1905). The Court based its decision on the lack of a public purpose and did not undertake a "lending the credit of the state" analysis.
In Chase v. County of Douglas, 195 Neb. 838, 241 N.W.2d 334
(1976), the Court found that the provisions of the statute authorizing expenditures for the purpose of acquiring real estate or options on real estate for industrial development were unconstitutional and in violation of Article XIII, § 3 of the Nebraska Constitution. Their holding was in part dependent upon another constitutional provision at Article XIII, § 2.
Given the purpose of the proposed legislation to support the arts and humanities in Nebraska and the Nebraska Arts Council, we cannot clearly conclude that this expenditure has no public purpose.
II. Article III, Section 18
Your other question concerns Article III, Section 18 of the Nebraska Constitution which provides that:
 [t]he Legislature shall not pass local or special laws in any of the following cases, that is to say: . . . Granting to any corporation, association, or individual any special or exclusive privileges, immunity, or franchise whatever. . . . In all other cases where a general law can be made applicable, no special law shall be enacted.
A legislative act can violate the special laws provision by (1) creating a totally arbitrary and unreasonable method of classification, or (2) by creating a permanently closed class.Haman v. Marsh, 237 Neb. 699, 467 N.W.2d 836 (1991); Mapco v.State Bd. of Equalization, 238 Neb. 565, 471 N.W.2d 734 (1991). With regard to the first test, the Nebraska Supreme Court has held that statutory classifications must be based on "somesubstantial difference of situation or circumstances that would naturally suggest the justice or expediency of diverse legislation with respect to the objects to be classified." Haman
at 713, 467 N.W.2d at 847 (emphasis in original). The court inHaman also determined that "[B]y definition, a legislative act is general, and not special, if it operates alike on all persons of a class or on persons who are brought within the relations and circumstances provided for. . . ." Id at 709,467 N.W.2d at 844-45).
While LB 799 creates only one entity, the Cultural Trust, which would invest, administer and distribute the funds, the analysis used by the Nebraska Supreme Court seems to focus upon those persons who come within a statute's operation and how equally the act operates on those affected by the statute. With regard to LB 799, the analysis would presumably focus upon the nonprofit arts organizations listed in section 2 of the bill which would ultimately receive the funds and the public which would be served by such organizations. LB 799 appears to apply equally to all persons within that class and, thus, would be permissible provided the classification rests upon a reasonable basis. The bill arguably classifies as being entitled to receive funds those arts organizations which best fit the public purposes described in section 2 and which contribute to the public programs and projects listed therein.
In its analysis of a constitutional challenge to the Nebraska Mortgage Finance Fund, the Nebraska Supreme Court focused on the public purpose for which those funds were intended. "Statutes which are reasonably designed to protect the health, morals and general welfare do not violate the Constitution where they operate uniformly on all within a class which is reasonable. This is so even if a statute grants special or exclusive privileges where the primary purpose of the grant is not the private benefit of the grantees but the promotion of the public interest." Stateex rel. Douglas v. Nebraska Mortgage Finance Fund, 204 Neb. 445,466, 283 N.W.2d 12, 25 (1979). As we discussed in answer to your question regarding Article XIII, section 3, there is no hard and fast rule for determining whether a public purpose exists in a particular situation. Assuming for purposes of this opinion that a court would find that LB 799 accomplishes a public purpose, the legislation would probably be held not to violate the special laws prohibition as creating a totally arbitrary classification.
LB 799 clearly allows an increase in the number of class members who may be entitled to receive funds because it applies to all arts organizations which contribute to the public programs and projects described, including future arts organizations. Therefore, the legislation also does not appear to violate the closed class prohibition of Article III, section 18.
III. Article XII, Section 1
Although you have not specifically inquired about ArticleXII, section 1 of the Nebraska Constitution, we will briefly discuss this provision in relation to LB 799. Article XII, section 1 provides in relevant part:
 The Legislature shall provide by general law for the organization, regulation, supervision and general control of all corporations. . . . No corporations shall be created by special law . . . except those corporations organized for charitable, educational, penal or reformatory purposes, which are to be and remain under the patronage and control of the state.
Our office has previously discussed this provision in relation to proposed legislation implementing the One-Call Notification Center. Op. Att'y Gen. No. 92129. That bill created a single nonprofit corporation to operate the notification center. We noted that, while the provision may at first seem to prohibit creation of a specific corporation to perform the function described in the legislation, the analysis used by the Nebraska Supreme Court again seems to focus on who comes within the act's operation and how equally the act operates on those affected by the act. This is illustrated by the Douglas case discussed above in which the court held that the Nebraska Mortgage Finance Fund was created by a general law which was not in violation of Article XII, section 1. "The Legislature may very well determine that a legitimate public purpose can be accomplished by creating a single entity to handle the matter."Douglas at 455, 283 N.W.2d at 20. "The fact that certain of the funds once obtained through bonds may go to private lending institutions who in turn will make the funds available for low and moderate income citizens does not change the public purpose for which the funds are intended." Id. at 460, 283 N.W.2d at 22.
We point out that, of course, a court may view support for the arts differently than it viewed the shortage of adequate low cost housing and may view the disbursement of funds to local arts organizations differently than the disbursement of public funds to low and moderate income citizens. However, in our opinion LB 799 does not present a clear violation of Article XII, section 1.
Sincerely,
 DON STENBERG Attorney General
 Lynn A. Melson Assistant Attorney General
cc: Patrick J. O'Donnell Clerk of the Legislature
Approved By:
Don Stenberg
Attorney General