In re 1969-1970 County Tax Levy.
Frederick H. Mann et al., appellants, v. Wayne County Board of Equalization, appellee, School District of Wayne, Wayne County, Nebraska, et al., INTERVENERS-APPELLEES.
186 N. W. 2d 729

Filed April 23, 1971. No. 37757.

Wilson, Barlow & Watson and Kile W. Johnson, for appellants.

Donald R. Reed, for appellee.

B. B. Bornhoft, John V. Addison, Jewell, Otte & Pollock, Beech & Webster, Harry N. Larson, Patrick G. Rogers, Mark J. Fuhrman, and Raymond A. Jensen, for interveners-appellees.

Cline, Williams, Wright, Johnson & Oldfather and Kevin Colleran, for amicus curiae.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

McCOWN, J.

This action was brought by a group of individual taxpayers against the Wayne County Board of Equalization to declare all or portions of the Wayne County 1969-1970 nonresident high school tuition levy illegal and unauthorized. In the alternative, they prayed that section 79-4,102, R. S. Supp., 1969, be declared unconstitutional and void. The district court determined that no portion

of the levy was for an unlawful or unnecessary purpose; that section 79-4,102, R. S. Supp., 1969, was constitutional; and dismissed appellants' petition.

Some background may be advisable. The laws of Nebraska have long provided for a nonresident public high school education for Nebraska children residing in a public school district which does not maintain a high school course of study. Section 79-4,102, R. S. Supp., 1969, and its predecessor versions have provided methods of determining the number of qualified pupils in each county, and the amount of the nonresident high school tuition levy. That levy is applied to the property in the non-high school districts. Prior to 1969, the statutes had always provided that the high school district accepting nonresident pupils should receive a flat specified amount in dollars for specified periods of time. In the early part of this century, the amount was 75 cents per week per pupil. In 1967, it became $3.50 per day for the number of days the nonresident pupils were enrolled and school was in session.

In 1969, the Legislature again amended the statute and adopted section 79-4,102, R. S. Supp., 1969. Subsection (2) of that act provides: "The high school tuition rate for nonresident pupils shall be determined annually by the receiving district on a uniform basis for all pupils but such rate shall in no event be less than the average per pupil cost for the preceding school year determined as provided in subsection (3) of section 79-486. The superintendent of the receiving school shall certify such rate to the county superintendent on or before the second Monday in July of each year."

Subsection (3) of section 79-486, R. R. S. 1943, deals with contract prices between school districts for nonresident tuition. It provides in part: "The contract price for instruction referred to in subsections (1) and (2) of this section shall be the cost per pupil for the immediately preceding school year or the current year whichever appears more practical as determined by the

governing board of the district which accepts the pupils for instruction. The cost per pupil shall be determined by dividing the sum of the operational cost and debt service expense of the accepting district, except retirement of debt principal, plus three per cent of the insurable or present value of the school plant and equipment of the accepting district, by the average daily membership of pupils in the accepting district."

Pursuant to the statute, nine high school districts certified tuition rates for nonresident high school pupils to the Wayne County superintendent in 1969. Two of these high school districts were in Wayne County. The remaining seven districts were located in seven adjoining counties. The tuitions certified by the nine schools varied from $800 to $1,000. The average was $935. The two high school districts in Wayne County which certified rates were Wayne and Winside. The rates were $951 and $1,000 respectively. The annual finance report of the Wayne and Winside school districts showed the high school per pupil costs for the preceding school year to be $893.05 and $810.69 respectively. The Wayne County superintendent, pursuant to the statute, certified to the Wayne County Board that 240 Wayne County students had applied for free high school tuition privileges and that the amount necessary to pay the tuition for those pupils, in addition to the funds on hand in the high school tuition fund, was $174,148.80. The Wayne County Board of Equalization then set the Wayne County free high school levy at 10.98 mills for the 1969-70 school year.

The appellants' analysis of attendance figures for the first semester indicates that 115 of the 240 high school students attended Wayne High School; 32 attended Winside High School; and the balance of the students were attending out-of-county high schools. The certificate of the Wayne County superintendent shows that the total 1969 school levies for Wayne and Winside school districts were 61.47 and 53.29 mills respectively. The

school levies for the 30 non-high school districts in Wayne County, exclusive of the high school tuition levy, varied from 5.42 mills to 25.88 mills and averaged 12.6 mills. Including the high school tuition levy of 10.98, the average total school levy in the 30 school districts in Wayne County which did not maintain high schools was 23.58 mills. It will be noted that the average total school levy in the 30 school districts paying the high school tuition levy is less than one-half of the lowest levy of any district maintaining a high school in Wayne County. The appellants reside in some of the districts which do not maintain high schools.

The position of the appellants is that taxpayers of one taxing district cannot be required to pay taxes which are for the sole benefit of citizens in another taxing district. They assert that any nonresident tuition above the actual per pupil costs at the high schools attended is paid for the benefit of the taxpayers of the accepting district and is illegal. They assert that section 79-4,102, R. S. Supp., 1969, violates Article VIII, sections 1 and 4, Constitution of Nebraska, providing for uniformity of taxation and forbidding commutation of taxes, and that it also violates Article II, section 1, and Article III, section 1, Constitution of Nebraska, prohibiting improper delegation of legislative authority.

The challenge to constitutionality of the statute rests on the contention that the statute provides for only a minimum tuition rate but has no guidelines or standards or limitations as to a maximum. Therefore, the appellants contend that the receiving school district is free to charge any amount it wishes above the minimum and the statute is unconstitutional. The contention assumes improper motivation by both the state and the receiving district, and it also ignores the presumption of constitutionality.

In construing an act of the Legislature, all reasonable doubt must be resolved in favor of constitutionality. Schurmann v. Curtiss, 183 Neb. 277, 159 N. W. 2d 554;

State ex rel. Meyer v. Duxbury, 183 Neb. 302, 160 N. W. 2d 88.

The language of this court in a case involving a predecessor of this identical statute as far back as 1909 is appropriate here. "Legislative acts are presumed to be valid. Burdens imposed by statute are presumed to be reasonable. Courts should never assume that the lawmakers will deliberately attempt to spoliate one community for the benefit of another or pass laws without knowledge of existing conditions. In absence of proof to the contrary, courts ought to assume that the legislature acted with full knowledge of the facts upon which the legislation is based. The burden of proving that a statute contains unlawful or unreasonable terms rests upon those assailing it." Wilkinson v. Lord, 85 Neb. 136, 122 N. W. 699.

An analysis of our cases dealing with nonresident tuition as between school districts would indicate that a statute which provides for the raising of revenue for nonresident high school tuition which places a substantially unequal tax burden on either the district which receives the nonresident students or the district which sends them would be discriminatory. See, High School District v. Lancaster County, 60 Neb. 147, 82 N. W. 380; Wilkinson v. Lord, *supra;* State ex rel. Groves v. School District, 101 Neb. 263, 162 N. W. 640.

The legislative history of the enactment here shows a recognition of the fact that historically under a fixed tuition rate, it was cheaper for a taxpayer to live in a district which paid tuition than it was to live in the receiving district. The facts here show that assumption is still presumptively correct. The discriminatory effect of such a flat rate tuition provision and its questionable constitutional validity were specifically recognized by the Legislature, as well as the varying costs of high school education from district to district, and the possibilities of "shopping" for students.

The appellants assert that any variation between the

tuition rate and the actual per pupil cost creates a tax discrimination against either the receiving school district or the tuition paying district and is therefore unconstitutional as to one or the other. The logical result of this argument would be that any statute which might permit any variance at even one high school would be unconstitutional. Here nine high school districts in eight counties are involved, and the levy challenged is a composite one applied uniformly to all 30 non-high school districts in Wayne County. Under appellants' reasoning, a statute as to nonresident high school tuition which was constitutional would become a complete impossibility. Tuition rates are always prospective and in a period of rapidly increasing costs, even a complete and accurate cost figure is outdated before it becomes effective. Many cost items can only be determined by using figures which are, in some degree, arbitrary. Exact equalization is impossible to achieve in any area of taxation, but particularly in this sensitive area of school operations. Section 79-4,102, R. S. Supp., 1969, does not violate constitutional requirements of tax uniformity, nor constitute a commutation of taxes.

The appellants also assert that the challenged legislation unlawfully delegated the authority of the Legislature to the school districts without any reasonable limitations and standards. We cannot agree. A reasonable interpretation would be that the Legislature intended to allow the receiving district to compute the per pupil cost of operation under the formula set forth in section 79-486(3), R. R. S. 1943, and avoid a flat rate charge that might, in some instances, be more than compensatory to the receiving district and, in most instances, be less than compensatory to the receiving district.

If section 79-4,102, R. S. Supp., 1969, is read as tying the fixing of the tuition rate to a reasonably computed per pupil cost as specified in section 79-486(3), R. R. S. 1943, it seems clear that adequate standards and limitations have been placed upon the receiving district. Sec-

tion 79-486, R. R. S. 1943, clearly permits computation of per pupil costs by reference to either the immediately preceding school year or to the current year. Obviously, costs for the current year must be, in some degree, an estimate. Where the Legislature has provided reasonable limitations and standards for carrying out the delegated duties, there is no unconstitutional delegation of legislative authority. See Nickel v. School Board of Axtell, 157 Neb. 813, 61 N. W. 2d 566.

We believe a rule announced by this court long ago in a case involving the school district of the City of Omaha is applicable. "As is clearly apparent in a situation such as this the needs are not capable of exact ascertainment. In the very nature of things and as the pertinent statutes declare there may only be estimates, which of course negative any thought that accuracy must be attained. The true test is that there shall be a reasonable and approximate estimate and determination made in the light of the known and reasonably ascertainable facts and also in the light of known and fairly anticipated conditions." C.R.T. Corp. v. Board of Equalization, 172 Neb. 540, 110 N. W. 2d 194.

The appellants have also contended that the nonresident taxpayer does not receive credit for his federal and state tax dollar which return to the receiving high school district in the form of federal and state aid which, in turn, creates additional discrimination. Nothing in section 79-4,102, R. S. Supp., 1969, and nothing in the formula contained in section 79-486(3), R. R. S. 1943, precludes consideration of state and federal aid. Nothing in the record indicates that credits were not given or, if not given, to what extent any adjustments should be made.

The rule is well established that the burden of proof is on the appellants to show that a school levy was, in fact, excessive. C.R.T. Corp. v. Board of Equalization, *supra.* This they have not done.

A reasonable interpretation of section 79-4,102, R. S.

Supp., 1969, is that it allows each individual high school district receiving nonresident students to determine, as accurately as is possible, the per pupil cost of high school education in its district and to certify a tuition rate for nonresident high school students based upon the average per pupil cost of high school education for the district, not less than the average per pupil cost for the preceding school year.

Because of the determinations already set out, we do not reach the issues of whether or not appellant taxpayers may maintain a class action under the facts here nor whether they have sufficiently pleaded or proved what proportion or amount of the challenged levy is claimed to be illegal or excessive.

For the reasons stated, no portion of the 1969-1970 Wayne County nonresident high school tuition levy was for an unlawful or unnecessary purpose and section 79-4,102, R. S. Supp., 1969, is constitutional. The determination of the district court was correct and its judgment is affirmed.

AFFIRMED.