V. EDSON EWING ET AL., APPELLEES AND CROSS-APPELLANTS, V. SCOTTS BLUFF COUNTY BOARD OF EQUALIZATION ET AL., APPELLEES, SCHOOL DISTRICT OF LYMAN IN SCOTTS BLUFF COUNTY ET AL., APPELLANTS AND CROSS-APPELLEES.

420 N.W.2d 685

Filed March 11, 1988.   No. 86-804.

Joy Shiffermiller of Atkins Ferguson Zimmerman Carney, P.C., for appellants School District of Scottsbluff and School District of Minatare; and Robert M. Spire, Attorney General, and Harold Mosher, for appellants State Board of Education and Lutjeharms.

Donn C. Raymond of Simmons, Raymond, Olsen, Ediger, Selzer & Ballew, P.C., for appellants School District of Gering, School District of Bayard, and School District No. 81.

R.L. Gilbert of Gilbert Law Offices, P.C., for appellants School District of Morrill and School District of Lyman.

G. Randolph Reed of Reed Law Office, for appellant School District of Mitchell.

Walter R. Metz, Jr., of Metz & Metz, for appellees Ewing et al.

James B. Gessford of Perry, Perry, Witthoff, Guthery, Haase & Gessford, P.C., for amici curiae School District of Lincoln et al.

Patrick G. Vipond of Sodoro, Daly & Sodoro, for amicus curiae School District of Ashland-Greenwood.

Thomas A. Danehey of Curtiss, Moravek, Danehey and Curtiss, P.C., and Laurice M. Margheim, for amici curiae School District of Alliance and School District of Hemingford.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

Plaintiffs (appellees and cross-appellants) filed their amended petition against defendants (appellants and cross-appellees), school districts of Lyman, Minatare, Mitchell, Morrill, Gering, Scottsbluff, School District No. 81 (all in Scotts Bluff County), school district of Bayard in Morrill County, State Board of Education, and Joe E. Lutjeharms, Commissioner of Education. Other defendants named in plaintiffs' amended petition (not appellants in this court) were Scotts Bluff County Board of Equalization, Scotts Bluff County treasurer Darlene Robertson, and Scotts Bluff County superintendent William D. Zitterkopf. Alliance School District in Box Butte County (Alliance) was originally named as a defendant, but its motion for summary judgment was sustained and plaintiffs' petition dismissed as to Alliance. No cross-appeal was taken from that dismissal.

The 10 appellants (hereinafter "defendants") appeal from the trial court's order granting plaintiffs' motion for summary judgment, determining that Neb. Rev. Stat. § 79-4,102 (Cum. Supp. 1984) is unconstitutional in its entirety, and granting

certain injunctive relief for the 1987-88 school year, while denying such relief for the 1986-87 school year. Because there have been numerous changes in § 79-4,102 over the years, a reference to that statute herein, without further identification, shall mean § 79-4,102 as amended by 1984 Neb. Laws, L.B. 930, and as codified in the cumulative supplement of 1984.

As set out in the four briefs filed on behalf of the defendants in the appeal herein and agreed to by plaintiffs as appropriate for both the appeal and the cross-appeal, the case may be summarized as follows.

Plaintiffs are taxpayers of Scotts Bluff County, owning property located within nonresident high school districts and subject to the Scotts Bluff County nonresident high school tuition levy. They filed this action for a declaratory judgment and for injunctive relief. Defendant school districts included all high school districts authorized to receive students from non-high-school districts in Scotts Bluff County, with tuition for said students paid to the receiving districts from tax funds to be generated by the nonresident high school tuition levy for 1985-86 on property located in the non-high-school districts. The county treasurer and the superintendent of schools of Scotts Bluff County and the State Department of Education and its Commissioner of Education were also joined as defendants.

Defendant school districts operate high schools and are Class III school districts, as described in Neb. Rev. Stat. § 79-102 (Reissue 1987). Plaintiffs are residents of Class I districts, which do not maintain high schools. The Legislature is faced with the duty imposed on it by Neb. Const. art. VII, § 1, to furnish "free instruction in the common schools of this state of all persons between the ages of five and twenty-one years." Since 1899, the Legislature has attempted in various ways to satisfy that duty and has enacted various statutes attempting to provide a constitutional method which would make a high school education available to children who reside in a district which does not maintain a school at that level. Not surprisingly, since the recovery of revenue by some form of taxation is necessary to operate the constitutionally required schools, litigation seems to follow each legislative enactment. The

history of that litigation is summarized, in part, in *Mann v. Wayne County Board of Equalization*, 186 Neb. 752, 186 N.W.2d 729 (1971), and not to be repeated here.

Plaintiffs, in their amended petition, alleged that § 79-4,102 was unconstitutional in one or more of the following respects:

1. The statute constituted an unlawful delegation of legislative authority to the State Department of Education and receiving districts in violation of Neb. Const. art. II, § 1, and Neb. Const. art. III, § 1.

2. The statute is unconstitutional in that to the extent the nonresident tuition charges are permitted to exceed the actual cost of educating nonresident high school students, the 1985-86 nonresident tuition levy violates Neb. Const. art. VIII, § 1, and U.S. Const. amend. XIV, which require taxation to be levied uniformly, and Neb. Const. art. VIII, § 4, which forbids commutation of taxes.

3. The statute is unconstitutional in that the nonresident tuition levy constitutes taxation without representation.

Defendants filed individual answers, each generally admitting plaintiffs' description of the parties, generally denying the other allegations of the amended petition, and alleging that § 79-4,102 was constitutional.

Plaintiffs and defendants filed motions for summary judgment. Defendants' motions were denied. The trial court in its decree found that there was no genuine issue of material fact and that plaintiffs were entitled to judgment, as a matter of law, that § 79-4,102 was unconstitutional in its entirety, stating in part:

3. Plaintiffs are entitled to a judgment as a matter of law, and are hereby rendered judgment that Laws 1984, LB930, as codified in §79-4,102 R.S.Supp., 1984 is unconstitutional and void by reason of an unlawful delegation of legislative power to the boards of education of school districts receiving nonresident students without sufficient or adequate standards pertaining to the exercise of discretion in applying that power, in violation of Article II, Section 1 and Article III, Section 1, Constitution of Nebraska.

4. Laws 1984, LB930, as codified in §79-4,102

R.S.Supp., 1984 is unconstitutional in its entirety and is therefore void and of no effect.

The court also granted certain portions of the requested injunctive relief.

Defendants appeal from that order. The errors assigned in the four briefs filed by various groupings of defendants may be summarized as follows: (1) that the trial court erred in holding § 79-4,102 was unconstitutional as an unlawful delegation of legislative authority to receiving school districts on the stated grounds that the section lacks sufficient guidelines and standards; (2) that the court erred in holding § 79-4,102 unconstitutional in its entirety, and not treating the portion of the statute relating to the authority of the receiving districts as severable; (3) that the court erred in granting an injunction; and (4) that the court erred because the plaintiffs can suffer no harm from the receiving districts' reductions of the amount of nonresident tuition.

In the appeal herein, we reverse the trial court's decision holding § 79-4,102 unconstitutional, for the reasons hereinafter set out. The matters of the injunctive relief, insofar as it was granted or denied, and of the constitutionality of § 79-4,102 challenged by plaintiffs-appellees in their cross-appeal will be later discussed.

In its memorandum decision and decree, the court found that § 79-4,102 was constitutional in all respects except in a part of § 79-4,102(2)(f) which is hereinafter set out in italics:

The State Department of Education shall certify such total high school tuition charge to the receiving district *which may reduce such charge to any amount decided by the receiving district's school board or board of education, except that such amount shall not be less than the per pupil cost in the district as stated in the immediately preceding annual term finance report on file with the State Department of Education.* The superintendent of the receiving district shall certify the nonresident high school tuition charge to the county superintendent for transmittal to the county treasurer and each receiving district on or before March 31 of each year.

(Emphasis supplied.)

That provision followed other sections of the statute setting out, in detail, the method for determining the high school tuition rate by the finance division of the State Department of Education. The trial court held that while the determination of the charge by the State Department of Education was constitutional, the portion of the statute italicized above was unconstitutional in that there was no standard set out in the statute governing the decision of the receiving school district as to whether the tuition charge set by the state board should be reduced and, if it were reduced, to what level. The trial court stated, "There is absolutely no standard given for where the [receiving] district may choose to fall within that range." The range referred to by the trial court is that between the tuition rate determined by the state board and "the per pupil cost in the district as stated in the immediately preceding annual term finance report on file with the State Department of Education."

The trial court stated, in its memorandum decision, in determining that § 79-4,102(2)(f) was unconstitutional:

No indication exists that receiving districts are limited to anything resembling "compensatory", "fair", "reasonable", or any other kind of rate. In short, no standard at all is furnished to receiving boards in exercising what amounts to a wide discretion that affects the taxes of another district. Where no standard at all is given, the delegation is unconstitutional.

We agree that the portion of § 79-4,102(2)(f) italicized above is unconstitutional. It is appropriate for the Legislature, in certain situations, to delegate taxing authority to a school district. As stated in *Banks v. Board of Education of Chase County*, 202 Neb. 717, 719-20, 277 N.W.2d 76, 78-79 (1979):

The power delegated by the statute is the power to levy a tax, and the tax is clearly limited as to amount and purpose. The plaintiff's contention that the Legislature is without constitutional authority to make such a delegation is without merit. Campbell v. Area Vocational Technical School No. 2, 183 Neb. 318, 159 N.W.2d 817, is controlling here: "A school district is a creation of the Legislature. Its purpose is to fulfill the constitutional duty placed upon the Legislature 'to encourage schools and the

means of instruction' and it is a governmental subdivision to which authority to levy taxes may properly be delegated under the Constitution."

The controlling issue on this point, however, is that the delegation must be limited to a determinable degree. This court has recognized that on many occasions. In *Banks, supra* at 719, 277 N.W.2d at 78, we noted, "The power delegated by the statute is the power to levy a tax, and the tax is clearly limited as to amount and purpose." In *Mann v. Wayne County Board of Equalization*, 186 Neb. 752, 759, 186 N.W.2d 729, 734 (1971), we stated, in holding that a delegated power was constitutional, "Where the Legislature has provided reasonable limitations and standards for carrying out the delegated duties, there is no unconstitutional delegation of legislative authority."

In the statute before us, there are no "reasonable limitations and standards." Under § 79-4,102(2)(f), the receiving district may reduce the tuition charge set by the State Department of Education "to any amount decided by the receiving district's school board or board of education . . . ." It is true that the reduction may not be "less than the per pupil cost in the district as stated in the immediately preceding annual term finance report," but that range is extremely wide. In the trial court's memorandum decision, the court states in footnote 12:

> The total amount used in the levy was $1,437,115 applied to Class I lands in Scotts Bluff County. If a cost per pupil educated were used, the figure would have been $881,718 for a difference of $555,397. This is 63% higher than what it would have been if the receiving districts had been more generous. Nine districts contributed to the certified levy, six of them actually had students from the county. Because a five-year average attendance is used, it is possible to certify an amount whether any students are educated that year or not.

The statute sets out no criteria as to the determination of the amount to be decided. We agree with the decision of the trial court on this point, and hold the following portion of § 79-4,102(2)(f) is unconstitutional:

> which may reduce such charge to any amount decided by the receiving district's school board or board of education,

except that such amount shall not be less than the per pupil cost in the district as stated in the immediately preceding annual term finance report on file with the State Department of Education.

The trial court, after making its determination as to the unconstitutionality of that portion of § 79-4,102, held that "Laws 1984, LB930, as codified in §79-4,102 R.S.Supp., 1984 is unconstitutional in its entirety and is therefore void and of no effect." With that determination we cannot agree.

This court has often held:

"Where it appears that unconstitutional portions of an act can be separated from the valid portions and the latter enforced independent of the former, and it further appears that the invalid portions did not constitute such an inducement to the passage of the valid parts that they would not have been passed without them, the former may be rejected and the latter upheld."

*Tom & Jerry, Inc. v. Nebraska Liquor Control Commission*, 183 Neb. 410, 417-18, 160 N.W.2d 232, 238 (1968).

In *State ex rel. Douglas v. Sporhase*, 213 Neb. 484, 486, 329 N.W.2d 855, 856-57 (1983), we set out the test to be applied in determining whether an unconstitutional clause may be severed from the remainder of a statute, as follows:

(1) Whether, when absent the invalid portions, a workable plan remains. *Nelsen v. Tilley*, 137 Neb. 327, 289 N.W. 388 (1939). (2) Whether the valid portions of an act can be enforced independently, and where the invalid portions do not constitute such an inducement to the valid parts that the valid parts would not have passed without the invalid parts. *State v. Padley*, 195 Neb. 358, 237 N.W.2d 883 (1976). (3) Whether the severance will do violence to the intent of the Legislature. *Chase v. County of Douglas*, 195 Neb. 838, 241 N.W.2d 334 (1976). (4) Whether a declaration of separability is included in the act, indicating that the Legislature would have enacted the bill absent the invalid portion. *State ex rel. Meyer v. County of Lancaster*, 173 Neb. 195, 113 N.W.2d 63 (1962); *Nelsen v. Tilley, supra.*

The bill in question did not contain a severability clause. The

presence of a severability clause in the statute being examined is not essential to a ruling declaring the offending portion of a statute severable. In *Chase v. County of Douglas*, 195 Neb. 838, 852, 241 N.W.2d 334, 342 (1976), we stated: "Where such a [severability] clause is not present, we have held: '. . . a severability clause is merely an aid to construction and not an inexorable command. A severability clause in a statute is not a condition precedent to a determination of the question of severability.' " See, also, *Tom & Jerry, Inc. v. Nebraska Liquor Control Commission, supra; Linn v. Linn*, 205 Neb. 218, 286 N.W.2d 765 (1980); *Tilton v. Richardson*, 403 U.S. 672, 91 S. Ct. 2091, 29 L. Ed. 2d 790 (1971).

Applying the tests set out in *Tom & Jerry, Inc., supra*, and in *Sporhase, supra*, our examination of § 79-4,102(2)(f) shows that when the italicized language set out above is removed, a "workable plan" remains. The statute sets out a procedure, in detail, to reach a certain result. The offending language does not affect the calculation of the amount of the rate determined by the finance division of the State Department of Education. The constitutionality of that rate is discussed below in connection with the cross-appeal, but it is clear that the language in question does not affect the calculation to be made.

Similarly, examination of the statute shows that the remaining valid portions of the act, assuming the language in question is severed, can be enforced independently. Without the offending language, the statute provides that the State Department of Education certifies the calculated charge to the receiving district and the superintendent of the receiving district certifies the charge to the county superintendent.

The next part of the test is to determine if the invalid portions of an act constituted such an inducement to the valid parts that the valid parts would not have passed without the invalid parts. Plaintiffs state in their brief at 9, "The legislative history indicates that the role of the receiving district to reduce tuition charges was a product of an amendment on the floor . . . . The sponsors must not have had votes for passage of the bill without the amendment. The amendment therefore constituted a 'primary inducement' for its passage."

Plaintiffs' conclusions as to why the Legislature acted as it

did are not more than that—conclusions. From the record before us, we cannot reach the conclusion that the sponsor did not have enough "votes for passage of the bill." The act itself is detailed and comprehensive, and we determine that its passage did not rise or fall on a last-minute addition, on the floor without debate, that would result in a detailed statute's failing in its entirety. For the same reasons, we cannot say that the severance will do violence to the intent of the Legislature.

As stated in *Tilton v. Richardson*, 403 U.S. at 684: " 'The cardinal principle of statutory construction is to save and not to destroy.' " The U.S. Supreme Court later stated, in *Alaska Airlines, Inc. v. Brock,* _____ U.S. _____, _____, 107 S. Ct. 1476, 1480, 94 L. Ed. 2d 661 (1987), " '[A] court should refrain from invalidating more of the statute than is necessary . . . .' "

We hold that severance of the unconstitutional portion of § 79-4,102(2)(f), to wit: "*which may reduce such charge to any amount decided by the receiving district's school board or board of education, except that such amount shall not be less than the per pupil cost in the district as stated in the immediately preceding annual term finance report on file with the State Department of Education,*" cannot be determined to constitute an inducement to the passage of 1984 Neb. Laws., L.B. 930, codified at § 79-4,102; does not make the act inoperative; and will not frustrate the intent of the Legislature. The remainder of § 79-4,102 remains a viable statute and, with the deletion set out above, is constitutional. In view of this holding, defendants' remaining assignments of error will not be discussed.

On the defendants' appeal, the judgment of the trial court is reversed and the cause remanded.

### CROSS-APPEAL

In their cross-appeal, constituting 34 pages of their 48-page brief, plaintiffs contend that the trial court erred in its determination that § 79-4,102 was constitutional in all respects except in the particulars discussed above. Plaintiffs challenge that determination and set out four assignments of error, which may be summarized:

1. The district court erred in finding that 1984 Neb. Laws, L.B. 930, does not constitute an unlawful delegation of authority to the State Department of Education.

2. The district court erred in failing to find that L.B. 930 is unconstitutional on its face, or as applied, because it permits nonresident tuition charges to exceed the cost of education the students received.

3. The district court erred in failing to find that the levying of taxes for purposes of nonresident tuition under § 79-4,102 constitutes an unconstitutional taxation without representation of residents of non-high-school districts within the county.

In beginning consideration of plaintiffs' challenge, in their cross-appeal, to the constitutionality of § 79-4,102, we reiterate the statement set out in *Tilton v. Richardson*, 403 U.S. 672, 684, 91 S. Ct. 2091, 29 L. Ed. 2d 790 (1971): " 'The cardinal principle of statutory construction is to save and not to destroy.' " This court has recognized that principle in many cases. In *Mann v. Wayne County Board of Equalization*, 186 Neb. 752, 756, 186 N.W.2d 729, 733 (1971), we stated: "In construing an act of the Legislature, all reasonable doubt must be resolved in favor of constitutionality."

The first error assigned on the cross-appeal concerns plaintiffs' contention that the Legislature has unconstitutionally delegated authority to the Nebraska Department of Education. It is clear that, although plaintiffs refer in their brief to the "Nebraska Department of Education," they refer to the State Department of Education, and that term will be used. First of all, the Nebraska Constitution, in article VII, makes general provisions for education in the state. Neb. Const. art. VII, §§ 2, 3, and 4, provide for a "State Department of Education" and set out provisions for the election of a State Board of Education and for the appointment, by that board, of a Commissioner of Education. The state department consists of the board and the commissioner. In this case, therefore, we are concerned with a constitutionally created agency which, as set out in Neb. Const. art. VII, § 2, "shall have general supervision and administration of the school system of the state and of such other activities as the Legislature may direct."

We said, in *School Dist. of Seward Education Assn. v. School Dist. of Seward*, 188 Neb. 772, 777, 199 N.W.2d 752, 756 (1972), quoting from *School Dist. No. 8 v. State Board of*

*Education*, 176 Neb. 722, 127 N.W.2d 458 (1964):

> "Article VII, section 14 [now article VII, § 2], of the Nebraska Constitution authorizes the grant of administrative and legislative powers to the State Department of Education, subject to implementation and limitation by the Legislature in accordance with Article VII, section 15 [now amended and set out in article VII, § 3], of the Constitution."

It is clear that the Legislature may delegate legislative powers to the State Department of Education. Plaintiffs do not contend that the State Department of Education does not have general powers to supervise and administer the state school system, but do contend that those powers do not extend to the power of taxation, pointing out that Neb. Const. art. VIII, § 1, provides, in part, "The necessary revenue of the state and its governmental subdivisions shall be raised by taxation in such manner as the Legislature may direct," and that Neb. Const. art. VII, § 1, provides, in part, "The Legislature shall provide for the free instruction in the common schools of this state of all persons between the ages of five and twenty-one years."

Some defendants present the contention that since the State Board of Education is a constitutionally established agency, the board must have the inherent power to raise revenue in order to perform its function. Although the state board is established by the Constitution and consists of elected members, the Constitution itself limits its powers when it states in Neb. Const. art. VII, § 3, that the board's "duties and powers shall be prescribed by the Legislature." The Legislature's overall powers are clearly set out in Neb. Const. art. VII, § 1, quoted above.

Nonetheless, the status of the state board must be kept in mind. As noted by the trial court in its memorandum decision in this case, "[T]here can be no unlawful delegation of legislative power because the [Nebraska] Constitution itself authorizes the delegations." The fact remains that the Legislature, to discharge its constitutional duties to "provide for the free instruction" of Nebraska schoolchildren, must set out guidelines within which the state board must exercise its duties in calculating the amount of apportionment of revenues

necessary for the operation of high schools for nonresident pupils.

Section 79-4,102 states, in part, "The high school tuition rate for nonresident pupils shall be determined annually by the finance division of the State Department of Education . . . ." The statute then sets out, in detail, the method by which that rate is to be calculated. Plaintiffs' cross-appeal on this point contends that the evidence shows that the Legislature has enacted a statute which is too vague to be followed. Plaintiffs summarize their contentions at page 39 of their brief, as follows:

1) LB930 is vague as to which NDE forms from which data necessary to carry out LB930 calculations is [sic] to be taken (enrollments and valuation data).

2) LB930 is vague as to what other sources of data NDE is to look to in making the calculations (enrollment and valuation data).

3) LB930 is vague as to which years from which the data is [sic] to be taken (enrollment and valuation data).

4) The meaning of the following terms are [sic] left undefined:

a) "Combined valuation base" (leading to the filing of Lancaster County District Court Case #388-001).

b) "Uniform taxation basis".

c) "Total current expense".

d) "Insurable or present value of school plant and equipment".

e) "Unadjusted share of operational expense".

f) "Annual cost of education index".

g) "Increasing or decreasing cost".

In summary, plaintiffs adopt the position that the Legislature itself must provide, in detail, the forms which the State Department of Education must use to collect data to implement its calculations, and must define, in a legislative enactment, terms such as "total current expense," "insurable or present value," and "increasing or decreasing cost." The standards in § 79-4,102(2) are set out in 6 subparagraphs consisting of 65 lines in our statutes. Among many other things, the State Department of Education is directed to consider data provided

to the board pursuant to other legislative enactments set out in Neb. Rev. Stat. §§ 79-451, 79-1331, 79-1333.02, and 79-1334 (Reissue 1987). In short, the Legislature has set out a detailed plan to solve a most difficult problem. It would appear that much greater detail could not be set out unless the Legislature would forgo all other responsibilities and itself become a full-time board of education. We agree with the determination of the trial court that the standards set out "are adequate and reasonable to accomplish the goal of apportioning secondary education costs between districts on a formula acknowledging and legislatively weighting number of pupils educated and respective property valuations of the districts."

We hold that § 79-4,102, here under consideration, does not "constitute an unlawful delegation of authority," as alleged by plaintiffs, and is not unconstitutional on that ground.

Insofar as plaintiffs contend § 79-4,102 is unconstitutional "on its face [emphasis in cross-appellants' assignment of error No. 2] because it permits nonresident tuition charges to exceed the cost of educating the students received," we determine that assignment is also without merit.

Plaintiffs, in this contention, summarize their position at page 29 of their brief as follows:

> To the extent that LB930 allows tuition charges to exceed the cost (as measured by per pupil cost) of the benefit received (education of nonresident students for the current year), it results in a lack of tax uniformity in violation of Article VIII, §1, Constitution of Nebraska, and the Fourteenth Amendment, United States Constitution.

There can be no disagreement as to the underlying principle that Neb. Const. art. VIII, § 1, requires that taxes shall be levied "uniformly and proportionately." In *Mann v. Wayne County Board of Equalization*, 186 Neb. 752, 757, 186 N.W.2d 729, 733 (1971), we stated: "[A] statute which provides for the raising of revenue for nonresident high school tuition which places a substantially unequal tax burden on either the district which receives the nonresident students or the district which sends them would be discriminatory." Plaintiffs contend that any tuition charges, other than the per pupil cost for each

student educated in the school year in question, are invalid. In earlier years, as noted in the *Mann* case at 757, 186 N.W.2d at 733, "historically under a fixed tuition rate, it was cheaper for a taxpayer to live in a district which paid tuition than it was to live in the receiving district." The Legislature provided, in § 79-4,102, for a way of calculating a nonresident tuition charge which is designed to compensate the receiving districts for maintaining a high school which the sending districts may utilize when they have children of high school age who claim their constitutional right to "free instruction in the common schools."

Section 79-4,102(2)(b) provides: "A combined valuation tax base shall be established . . . ." The subsection goes on to set out how to establish that base, in part, as a "proportionate share of the current valuation of all Class I school districts not a part of any Class VI school district in each county where nonresident students registered to attend the receiving district for the ensuing school year reside." The Legislature is getting away from a flat, per-student charge and attempting to establish a basis for the sharing of the common goal of educating our children through high school. That effort is not per se unconstitutional because it departs from a calculation based on per-pupil cost alone.

It is clear that absolute preciseness is not possible in this area. As we stated in *Mann, supra* at 758, 186 N.W.2d at 733:

> Tuition rates are always prospective and in a period of rapidly increasing costs, even a complete and accurate cost figure is outdated before it becomes effective. Many cost items can only be determined by using figures which are, in some degree, arbitrary. Exact equalization is impossible to achieve in any area of taxation, but particularly in this sensitive area of school operations.

Earlier, we noted in *C. R. T. Corp. v. Board of Equalization*, 172 Neb. 540, 549, 110 N.W.2d 194, 200 (1961):

> As is clearly apparent in a situation such as this the needs are not capable of exact ascertainment. In the very nature of things and as the pertinent statutes declare there may only be estimates, which of course negative any thought that accuracy must be attained. The true test is

that there shall be a reasonable and approximate estimate and determination made in the light of the known and reasonably ascertainable facts and also in the light of known and fairly anticipated conditions.

The burden is on one who attacks a statute to prove facts to establish its invalidity. *City of Parkview v. City of Grand Island*, 188 Neb. 267, 196 N.W.2d 197 (1972). Statutes are presumed to be constitutional, and unconstitutionality must be clearly established. *Weiner v. State ex rel. Real Estate Comm.*, 217 Neb. 372, 348 N.W.2d 879 (1984).

In this case before us, plaintiffs have the burden of establishing that § 79-4,102 is unconstitutional. They have not met that burden insofar as their allegation that the taxes on the receiving and sending districts are not uniform. It appears that the statute authorizes a tuition charge higher than the per-pupil cost as determined in years past. It is not necessarily unconstitutional for the Legislature to give weight to the fact that receiving districts have erected and maintained a school system, providing for physical buildings and staffing, available to furnish constitutionally required high school education over long periods of time, although some taxpayers from sending districts wish to pay only for the sporadic actual utilization of the facilities. The setting of rates beyond per-pupil costs is not per se unconstitutional. *Mann v. Wayne County Board of Equalization, supra.*

Insofar as plaintiffs contend § 79-4,102 is unconstitutional "as applied" (emphasis in cross-appellants' third assignment of error), the same analysis leads to the conclusion that the assigned error is without merit. Again, plaintiffs premise their contention on the proposition that any amount, other than the precise per-pupil charge for each pupil actually educated in the receiving high school, is unconstitutional. As we have stated above, § 79-4,102 is not unconstitutional, per se, merely because it set a rate higher than per-pupil cost as historically calculated. Plaintiffs have not shown the detailed formula set out in § 79-4,102 to be discriminatory, in practice.

Plaintiffs' last challenge to the constitutionality of § 79-4,102 is that the statute "constitutes an unconstitutional taxation . . . without representation." In their argument,

plaintiffs complain of the "[wholesale] delegation of authority . . . made in LB930 to the receiving districts to allow them to set their tuition charges within the broad guidelines" between per-pupil cost as a floor and the charge certified by the State Department of Education as a ceiling. Brief for Cross-appellants at 44.

The "wholesale delegation" to the receiving districts has been determined to be unconstitutional and has been stricken from the statute in question.

The authority to set the charge has been given to the State Department of Education by the Legislature. Neb. Const. art. VII, § 2, provides that the department is comprised of a "State Board of Education" and a Commissioner of Education. Neb. Const. art. VII, § 3, provides that eight members of the board "shall be elected from eight districts." The members of the Legislature, which prescribes the "duties and powers" of the state board, are elected. Plaintiffs' contention of "taxation without representation" is without merit.

In conclusion, we hold that 1984 Neb. Laws, L.B. 930, codified in § 79-4,102 of the cumulative supplement of 1984, is constitutional when the unconstitutional portion is severed. The trial court's determination to the contrary is reversed.

On plaintiffs' cross-appeal, the determination of the trial court is affirmed. In its order the trial court denied plaintiffs' request seeking injunctive relief for the 1986-87 school year and granted certain relief for the 1987-88 school year. We are aware that § 79-4,102, effective July 10, 1984, has already been amended by 1987 Neb. Laws, L.B. 182, effective May 30, 1987, and 1987 Neb. Laws, L.B. 367, effective August 1, 1987. The injunction of the trial court is vacated and the cause is remanded.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.

KRIVOSHA, C.J., not participating.